No. 3--02--0196

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2000

PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the Circuit Court

) of the 12th Judicial Circuit

Plaintiff-Appellee, ) Will County, Illinois

)

) No. 00--CM--4047

)

DAVID GROCHOCKI, ) Honorable

) Robert C. Lorz

Defendant-Appellant. ) Judge, Presiding

JUSTICE HOLDRIDGE delivered the opinion of the court:

David Grochocki was found guilty of sexual exploitation of a child (720 ILCS 5/11--9.1(a)(1) (West 2000)) and sentenced to 12 months of conditional discharge.  He was also required to register under the Sex Offender Registration Act (Registration Act) (730 ILCS 150/1 
et
 
seq.
 (West 2000)).  He filed a motion to reconsider his sentence, which was denied.  He also filed a motion to declare recent amendments to the Sex Offender and Child Murderer Community Notification Law (Notification Law) (730 ILCS 152/101 
et
 
seq.
 (West 2000)) unconstitutional.  That motion was denied as well.

Grochocki then filed this appeal claiming: (1) the recent amendments violate his right to privacy under the Illinois Constitution; (2) the amendments violate the proportionate penalties clause of the Illinois Constitution; (3) the amendments violate his due process rights under the Illinois Constitution; and (4) his sentence of conditional discharge is excessive.  We disagree with these claims and thus affirm the circuit court’s judgment.

BACKGROUND

The Registration Act requires sex offenders to register with certain specified government officials.  730 ILCS 150/3 (West 2000).  Prior to July 1, 2000, the Notification Law required officials to disclose a sex offender’s registration information to school boards, school principals, and child care facilities in the county where the offender resided.  730 ILCS 152/120(a) (West 1998).  The information included the offender’s “name, address, date of birth, and offense or adjudication.”  730 ILCS 152/120(a) (West 1998).  Officials could also disclose the information to any person likely to encounter the offender (730 ILCS 152/120(b) (West 1998)), and the information was available for public inspection at municipal police departments and county sheriff’s offices (730 ILCS 152/120(c) (West 1998)).

On July 1, 2000, two amendments expanded the scope of disclosure under the Notification Law.  The following language was added to section 115 of the Law:

“The Department of State Police must make the information contained in the Statewide Sex Offender Database accessible on the Internet by means of a hyperlink labeled ʻSex Offender Informationʼ on the Department’s World Wide Web home page.  The Department of State Police must update that information as it deems necessary.

The Department of State Police may require that a person who seeks access to the sex offender information submit biographical information about himself or herself before permitting access to the sex offender information.  The Department of State Police may limit access to the sex offender information to information about sex offenders who reside within a specified geographic area in proximity to the address of the person seeking that information.  The Department of State Police must promulgate rules in accordance with the Illinois Administrative Procedure Act to implement this subsection (b) and those rules must include procedures to ensure that the information in the database is accurate.”  730 ILCS 152/115(b) (West 2002).

The following language was added to section 120 of the Law:

“The sheriff or a municipal police department may publish the photographs of sex offenders where any victim was 13 years of age or younger and who are required to register in the municipality or county under the Sex Offender Registration Act in a newspaper or magazine of general circulation in the municipality or county or may disseminate the photographs of those sex offenders on the Internet or on television.”  730 ILCS 152/120(c) (West 2002).

In October of 2000 Grochocki and James Manski took their children to spend the night at a motel.  Grochocki took two daughters and a son, and Manski took a 13-year-old daughter (Terri) and a son.  The two men drank alcohol while the children played until about midnight.  Then Grochocki retired to one room with the girls, and Manski retired to another room with the boys.  Terri testified that she awoke around 3 a.m. and found Grochocki sitting in a chair, naked from the waist down, masturbating with his feet on her bed.  He said: “Oh Terri, it feels so good--I’ve always wanted you.”  Terry left the room and later told her parents about the incident.

Grochocki acknowledged sitting in a chair next to Terri’s bed and reading a book while smoking a cigarette.  However, he said he drank a lot of alcohol that night and did not remember the incident.  He denied any knowledge of masturbation.

At the sentencing hearing, Jeffery Martin (a licensed clinical social worker) testified that Grochocki posed a low risk of recidivism.  Martin based his opinion on several factors, including: no history of paraphilic interest; no signs of compulsiveness related to sexual behaviors; a single victim; and the hands-off nature of the offense.  Martin assessed Grochocki’s prognosis as favorable given his responsiveness to treatment, a solid history of community involvement, and no other history of acting out.

Pursuant to the Notification Law, Grochocki’s photograph was published on the Internet along with biographical information including his full name, date of birth, height, weight, and address.

CONSTITUTIONAL CLAIMS

Standard of Review

We conduct a 
de
 
novo
 review of decisions regarding the constitutionality of statutes.  
People v. Fisher
, 184 Ill. 2d 441 (1998). 

Right to Privacy

Grochocki argues that the amendments permit his registration information to be “disseminated broadly and without any restriction.”  Such unbridled scope, he claims, violates his state constitutional right to privacy.  In his view, the dissemination should be more “carefully tailored to the risk of re-offense and to specific individuals or groups likely to come into contact with [him].”

Article I, section 6, of the Illinois Constitution reads: “The people shall have the right to be secure in their persons, houses, papers and other possessions against unreasonable *** invasions of privacy.”  Ill. Const. 1970, art. I, §6.  According to this language, invasions of privacy are not prohibited if they are reasonable.  See 
Burger v. Lutheran General Hospital
, 198 Ill. 2d 21, 52 (2001) (Noting that “the right to privacy is not absolute.  Only 
unreasonable
 invasions of privacy are constitutionally forbidden.”).   Statutes carry a presumption of constitutionality, and a challenger bears the burden of clearly proving that a statute is invalid.  
People v. Inghram
, 118 Ill. 2d 140 (1987).  “[I]t is our duty to construe acts of the legislature so as to uphold their constitutionality and validity if it can reasonably be done, and *** if their construction is doubtful, the doubt will be resolved in favor of the validity of the law attacked.”  
Illinois Crime Investigating Comm’n v. Buccieri
, 36 Ill. 2d 556, 561 (1967).

Criminal proceedings are open to the public.  This fact was well-established even before the founding of our nation.  In a 1774 letter to the inhabitants of the Province of Quebec, the Continental Congress observed:

“[N]either life, liberty nor property, can be taken from the possessor, until twelve of his unexceptionable countrymen and peers of his vicinage, *** upon a fair trial, and full enquiry, face to face, in open Court, 
before as many of the people as chuse to attend
, shall pass their sentence upon oath against him ***.”  (Emphasis added.)  1 Journals of the Continental Congress, 1774-1789, at 107 (1904).

The United States Supreme Court later declared: “A trial is a public event.  What transpires in the courtroom is public property. *** 
Those who see and hear what transpired can report it with impunity
.”  (Emphasis added.)  
Craig v. Harney
, 331 U.S. 367, 374, 91 L. Ed. 1546, 1551, 67 S. Ct. 1249, 1254 (1947).  
Cf.
 
In re Oliver
, 333 U.S. 257, 92 L. Ed. 682, 68 S. Ct. 499 (1948) (noting the Court’s inability to find even one historical instance where a federal, state, or municipal court conducted a criminal trial 
in
 
camera
).

The openness of criminal proceedings is not limited to persons who physically attend them; any person can review a court’s file from a particular case after the adjudication is concluded.  
This fact is reflected in section 16 of the Clerks of Courts Act:

“All records, dockets and books required by law to be kept by [circuit court] clerks shall be deemed public records, and shall at all times be open to inspection without fee or reward, and all persons shall have free access for inspection and examination to such records, docket and books, and also to all papers on file in the different clerks’ offices and shall have the right to take memoranda and abstracts thereto.”  705 ILCS 105/16(6) (West 2000).

This provision encompasses a circuit court’s judgment docket--an instrument “intended to afford full and complete information to all the world.”  
Day v. Graham
, 6 Ill. 435, 440-41 (1844).

Personal information about Grochocki (including the nature of his offense) is obviously contained in the circuit court’s file from his prosecution.  Accordingly, that information is available to anyone in the world.  The Emir of Kuwait could review Grochocki’s file because it is public property.  Such access exists regardless of whether seekers might come in contact with Grochocki, and regardless of whether he poses a low risk of recidivism.  Under these circumstances, we conclude that Grochocki does not have a cognizable privacy interest in his registration information.  Before the recent amendments to the Notification Law, the Appellate Court, Second District, observed: “The defendant cannot argue that the compilation and dissemination of truthful information that is already, albeit less conveniently, a matter of public record constitutes a legitimate privacy interest.”  
People v. Logan
, 302 Ill. App. 3d 319 (1998).  This observation remains true.

The instant case is quite distinguishable from other cases where claimants successfully invoked their state constitutional right to privacy.  For example, 
Kunkel v. Walton
, 179 Ill. 2d 519 (1997), involved a statute providing that persons who filed claims for injury or disease automatically waived their privilege of confidentiality with their health care providers.  
In re May 1991 Will County Grand Jury
, 152 Ill. 2d 381 (1992), involved efforts by a grand jury to subpoena physical evidence from a witness without a showing of individualized suspicion.  In these cases, there was no showing that the claimants engaged in conduct that lowered the privacy bar.  Grochocki, however, did engage in such conduct.  His acts spawned a criminal prosecution culminating in a public record that contains the challenged information.  We simply disagree with the dissent’s assertion that wide dissemination of public information somehow invokes a privacy interest.  The key concepts (“public” and “private”) are clearly dissimilar.

Proportionate Penalty

Grochocki also claims the recent amendments violate the proportionate penalties clause of the Illinois Constitution.  The clause reads: “All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship.”  Ill. Const. 1970, art. I, §11.  According to Grochocki, wide dissemination of his sex offender status “constitute[s] punishment far in excess of the act for which [he] was convicted.”

Contrary to Grochocki’s claim, the proportionate penalties clause is inapplicable because dissemination of his sex offender status is not “punishment” or a “penalty.”  The punishment for his crime was 12 months of conditional discharge.  The procedure outlined in the Notification Law is not additional punishment; it is an effort to protect the public (especially children).  The Illinois Supreme Court reached this conclusion prior to the recent amendments.  See 
People v. Malchow
, 193 Ill. 2d 413 (2000).  The broader dissemination prescribed in the amendments does not change the result--the current notification procedure simply is not a penalty.

The standard for making this determination is two-fold.  First, we must examine the legislative intent behind the Notification Law to assure that a penalty was not intended.  
Malchow
, 193 Ill. 2d 413.  Second, even if the legislative intent was not punitive, we must determine whether the Law has a punitive effect despite its non-punitive purpose.  The following factors are relevant when applying this second prong: (1) whether the “sanction” involves an affirmative disability or restraint; (2) whether the sanction has been historically regarded as punishment; (3) whether the sanction comes into play only on a finding of 
scienter
; (4) whether operation of the sanction will promote retribution and deterrence; (5) whether the behavior to which the sanction applies is already a crime; (6) whether an alternative purpose to which the sanction may rationally be connected is assignable for it; and (7) whether the sanction appears excessive in relation to the alternative purpose assigned.  
Malchow
, 193 Ill. 2d 413.

Regarding the first prong, the Notification Law creates a system where sex offender information is logged in an accessible manner.  The intended purpose of this system is to inform and protect persons who may otherwise unwittingly come in contact with such offenders.  In 
People v. Adams
, 144 Ill. 2d 381 (1991), the Illinois Supreme Court held that the legislative intent behind the Registration Act was to create added protection for children against sexual assault and child abuse.  In 
Malchow
 the Court reached a similar holding regarding the Notification Law.  We see no reason to depart from these holdings in the instant case.  Although the recent amendments expand the accessibility of sex offender information, the Law’s underlying purpose is unchanged.

Regarding the second prong, the United States Supreme Court recently held that an Alaska statute authorizing publication of sex offender information on the Internet did not have a punitive effect.  
Smith v. Doe
, ___ U.S. ___, 155 L. Ed. 2d 164, 123 S. Ct. 1140 (2003).  Since 
Smith
 involved the United States Constitution, it does not control our determination of Grochocki’s state constitutional claim.  Nevertheless, we believe the Supreme Court’s reasoning is correct.  Our analysis of the seven relevant factors is as follows.

(1) The Notification Law clearly does not place an affirmative disability or restraint on sex offenders.  The Law is informative rather than restrictive; it does not curtail an offender’s freedom to act
.

(2) Publishing sex offender information on the Internet is not comparable to branding, pillory, banishment, or similar measures historically regarded as punishment.  Such measures either spotlighted an offender to garner face-to-face ridicule or completely ostracized him from the community.  By contrast, the Notification Law merely disseminates truthful, public information to advance a legitimate government interest.  “An individual seeking the information must take the initial step of going to the [Department of State Police] Web site, proceed to the sex offender registry, and then look up the desired information.  The process is more analogous to a visit to an official archive of criminal records than it is to a scheme forcing an offender to appear in public with some visible badge of past criminality.”  
Smith
, ___ U.S. at ___, 155 L. Ed. 2d at 181, 123 S. Ct. at 1151.

(3) The Notification Law clearly does not have a 
scienter
 requirement.
  The Illinois Supreme Court signaled this fact in 
Malchow
, 193 Ill. 2d at 423: “The only requirement for the notification provisions to become effective is that the offender is released into the community.”  The Law’s recent amendments did not change this decisive fact.

(4) Publication of sex offender information may lead to retribution, but the value of this fact is questionable because such information is open to the public regardless of the Notification Law.  The clearest cause of any retribution is the fact that criminal files are public property in the first place--not the fact that information from such files is placed on the Internet.  As noted above, using the Internet to locate the information resembles a personal visit to a criminal archive.

Publication of sex offender information may also have some deterrent effect.  However, “it is unlikely that those not already deterred from committing sex offenses by the possibility of lengthy prison terms will be deterred by the additional possibility of community notification.  Moreover, even an obvious deterrent purpose does not necessarily make a law punitive.”  
Malchow
, 193 Ill. 2d at 423.  Given the dubious nature of any deterrent effect from the Notification Law, such effect hardly negates the legislature’s intent to establish a non-punitive system.

(5) The Notification Law applies only to sex offenders and child murderers.  Since sex offenses and murder are criminal acts, the behavior to which the Law applies is already a crime.  This factor, unlike any of the others, clearly weighs in Grochocki's favor.

(6) As noted above, a purpose other than punishment can rationally be associated with the Notification Law.  The purpose of the Law is to protect the public (especially children).

(7) The Notification Law is not excessive in relation to its purpose of protecting the public from sex offenders.  Grochocki complains that the Law authorizes vast dissemination of sex offender information without considering an offender’s likelihood of recidivism.  What he fails to recognize, however, is how little the Law really changed the 
status
 
quo
.  Even without the Law, his criminal information would be open to the world regardless of his recidivist potential.  The only real change stemming from the Law is the procedure for conducting a search (use of an electronic archive).  The legislature has decided to eliminate a trip to the courthouse--and the process of garnering desired information from a court file--for persons who desire sex offender information.  Since such persons are entitled to the information anyway (regardless of their motives), we cannot say that the electronic archive negates the legislature’s non-punitive intent.

Only one of the seven factors clearly weighs in Grochocki’s favor.  Any weight he gets from other factors is truly questionable.  Accordingly, the proportionate penalties clause is inapplicable because the recent amendments to the Notification Law do not impose a penalty.

Due Process

Article I, section 2, of the Illinois Constitution provides that “[n]o person shall be deprived of life, liberty or property without due process of law.”  Ill. Const. 1970, art. I, §2.  Grochocki claims the recent amendments violate this provision because “[h]is inclusion in the registry implies that he is currently dangerous and poses a risk to reoffend [without giving him] an opportunity to prove otherwise.”

The Notification Law clearly does not deprive Grochocki of his life.  Thus, to trigger the due process clause, he must show that the Law deprives him of a protected liberty or property interest.  
Logan
, 302 Ill. App. 3d 319.  He has failed in this regard.  Under the federal due process clause, damage to a person’s reputation does not constitute a deprivation of liberty or property.  See 
Paul v. Davis
, 424 U.S. 693, 47 L. Ed. 2d 405, 96 S. Ct. 2194 (1976).  In the context of the Notification Law, we see no reason to find otherwise under our state due process clause.  The primary reason for this view has been repeatedly articulated by Illinois courts: any stigma suffered by a sex offender stems from his own criminal acts, not from truthful and accurate compilation of public information.  See, 
e.g.
, 
Malchow
, 193 Ill. 2d 413; 
Adams
, 144 Ill. 2d 381; 
Logan
, 302 Ill. App. 3d 319; 
People v. Fuller
, 324 Ill. App. 3d 728 (2001).

The instant facts do not entail an interest that invokes the due process clause.

SENTENCING CLAIM

Finally, Grochocki claims we should reverse his sentence because “[a] sentence of supervision [rather than conditional discharge] would have been more appropriate in light of the circumstances.”

The prerogative of fashioning an appropriate sentence is within a trial judge’s discretion.  
People v. Thomas
, 171 Ill. 2d 207 (1996).  Accordingly, we will not reverse a sentence unless it constitutes an abuse of discretion.  
People v. Franks
, 292 Ill. App. 3d 776 (1997).  We also will not re-weigh sentencing factors or substitute our judgment for that of the trial court.  
People v. Hunzicker
, 308 Ill. App. 3d 961 (1999).  When a sentence falls within the statutory range, it does not constitute an abuse of discretion unless it is manifestly disproportionate to the nature of the offense.  
Franks
, 292 Ill. App. 3d 776.

Grochocki’s sentence of 12 months of conditional discharge falls well within the statutory range.  Under the applicable statutes, the judge could have sentenced him to prison for any period less than a year.  720 ILCS 5/11--9.1(a)(1) (West 2000); 730 ILCS 5/5--8--3(a)(1) (West 2000).  We appreciate the mitigating factors Grochocki highlights in his brief.  However, rather than signaling an abuse of discretion, those factors ostensibly explain why the judge spared Grochocki from imprisonment.  A term of conditional discharge reasonably accounts for the mitigating factors while also avoiding deprecation of the seriousness of the offense.  The judge did not commit reversible error.

CONCLUSION

For the foregoing reasons, the judgment of the Will County circuit court is affirmed.

Affirmed.

SLATER, J., concurs.

MCDADE, P.J., dissents.

PRESIDING JUSTICE McDADE, dissenting:

I respectfully dissent from the majority opinion that the challenged provisions of the Illinois Sex Offender Registration Act (730 ILCS 150/1 
et seq
. (West 2002)) (Registration Act) and the Illinois Sex Offender and Child Murderer Community Notification Act (730 ILCS 152/101 
et seq.
 (West 2002)) (Notification Act) pass muster under the Illinois Constitution. In doing so, I want to emphasize that I believe the State has a legal and moral responsibility to protect the most vulnerable members of our communities from the probable danger posed by recidivist sexual offenders.  I dissent only because the statutes sweep too broadly and too indiscriminately and therefore violate certain guarantees to individuals, who also have rights protected by our State constitution.

This appeal challenges the constitutionality of certain provisions of the Registration Act and the Notification Act which require that information about individuals designated as sex offenders be published on the internet via the Illinois Department of State Police website. 

FACTUAL AND PROCEDURAL BACKGROUND

On October 7, 2000, the defendant, David Grochocki, went camping with his three children, his friend James, and James' son and daughter Terri.  It rained, however, and rather than camp outside, the group stayed in a hotel.  They arrived at around noon, and the defendant and James drank beer and rum while the children played.  That night, David stayed in a room with his daughters and Terri.  James stayed in another room with the boys. During the night, Terri awoke to discover the defendant seated in a chair next to her bed with his feet on the mattress.  He had no pants on, and was masturbating while saying "Oh Terri, it feels so good, I've always wanted you."  Alarmed, Terri fled the room, and later told her parents, who reported the incident to the police.  The defendant maintains that he was extremely intoxicated on the night in question and
 
does not remember the incident.

Prior to trial, the defendant was assessed by Jeffery Martin, a licensed social worker.  In his evaluation, Martin stated that he considered the defendant to have a low risk of recidivism.  He based this conclusion on the fact that the defendant did not touch the victim during the commission of the offense and did not exhibit any indication of sexual compulsions. Further, Martin explained that the defendant's behavior was directed at a specific individual, and that the defendant did not have a generalized desire to molest children.  Martin also noted that the defendant had responded well to psychological treatment and alcoholism therapy, was an active member of the community, and had no prior history of acting out in similar ways.

The defendant was convicted in the Will County Circuit Court of sexual exploitation of a child, and was sentenced to conditional discharge, presumably, as the majority notes, because of mitigating factors, including those noted above.  Pursuant to section 2 of the Registration Act, the defendant was required to register as a sex offender and, as a result, he was placed on the sex offender database.  Biographical information, such as his address, date of birth, height, weight, and a picture, were published on the internet.

ANALYSIS

The defendant argues that the provisions of the Registration Act and Notification Act that allow his picture, address and criminal history to be published on the internet violate the privacy guarantee, proportionate penalties clause, and due process clause of the Illinois Constitution.  He also claims that the trial court erred in sentencing him to conditional discharge rather than court supervision.  I believe that the statute violates the privacy, proportionate penalties, and due process clauses, and would not reach the sentencing issue.

PRIVACY

First, the defendant argues that the Registration and Notification Acts violate his constitutional right to privacy since they require the public dissemination of his personal information on the internet.  The Illinois Supreme Court has already been presented with the question of whether previous versions of the Registration Act and Notification Act violate the privacy clause of the state constitution, but the court refused to address the issue due to inadequate briefing.  
People v. Malchow
,  193 Ill. 2d 413, 426, 739 N.E.2d 433, 441-42 (2000). This question is, therefore, one of first impression.

The Illinois Constitution provides that "[t]he people shall have the right to be secure in their persons, houses, papers and other possessions against unreasonable searches, seizures, [and] invasions of privacy..."  Ill. Const. 1970, Art. I, §6. The Illinois Constitution expressly recognizes a zone of personal privacy, which
 is stated broadly and without restriction. 
In re May 1991 Will Co. Grand Jury
, 152 Ill. 2d 381, 391, 604 N.E.2d 929, 934 (1992).

If a state action implicates the right to privacy, the invasion of that privacy must be reasonable.
  Will Co. Grand Jury
, 152 Ill. 2d at 392, 604 N.E.2d at 935.  To determine reasonableness, the court must balance the individual's right to privacy against the State's or society's right to the information.  
Will Co. Grand Jury
, 152 Ill. 2d at 392, 604 N.E.2d at 935.

The Illinois Supreme Court has recently expanded the scope of the privacy guarantee of the Illinois Constitution.  In 
Will Co. Grand Jury
 the court found that it was an invasion of privacy for a grand jury to subpoena physical evidence from a witness when there was no showing of individualized suspicion. 
 Will Co. Grand Jury
, 152 Ill. 2d at 393, 604 N.E.2d at 935-36.  The court reasoned that, although it is important to allow a grand jury wide latitude in gathering and examining evidence, the right must be balanced against the right of the individual to be free from having his personal characteristics examined unreasonably.  The court found that, absent reasonable suspicion that a person was actually involved in a crime, the grand jury does not have the power under the privacy clause to require a person to participate in a line-up, give fingerprint samples, or relinquish personal  documents.  
Will Co. Grand Jury
, 152 Ill. 2d at 392-93, 604 N.E.2d at 935. 

Kunkel v. Walton
, 179 Ill. 2d 519, 689 N.E.2d 1047 (1997), involved a statutory mandate that a person who files a claim for injury or disease automatically waives the privilege of confidentiality with his health care provider.  The court reasoned that the statute violated the privacy clause, arguing that the "confidentiality of personal medical information is, without question, at the core of what society regards as a fundamental component of individual privacy," (
Kunkel
, 179 Ill. 2d at 537, 689 N.E.2d at 1055) and found that a blanket abrogation of privilege, without a determination of the relevance of the subject information, was unreasonable.  
Kunkel
, 179 Ill. 2d at 539, 689 N.E.2d at 1056.

The statutes at issue here allow the State to publish personal information about sexual offenders on a website, on television, and through the print media.  (730 ILCS 152/120 (West 2002)).  The information published about the offender is limited to public information, such as the defendant's address, his picture, the crime of which he has been convicted, his birth date, and his conviction date. (730 ILCS 152/120 (West 2002)). The defendant argues that the publication of this information, to a wide audience, amounts to an unreasonable invasion of privacy on par with those examined in 
Kunkel
 and 
Will Co. Grand Jury
.

To evaluate the defendant's claim, it must first be determined whether the disclosures made on the website are even presumptively covered by the privacy clause.  The majority objects that in both 
Kunkel
 and 
Will County Grand Jury
 the nature of the information disclosed (medical records, personal documents, fingerprints) was substantially more personal than that published in this case. The information in those cases is not the type generally available in the public domain, and it is reasonable to say that most people expect it to be private.  In this case, the information is in the public domain, and is available, absent the registry, to anyone who diligently seeks it out.  Information concerning height, weight, street address, and record of conviction is not highly personal in the same way that medical records and personal documents are.  However, despite the fact that we deal here with more generic and more easily accessible personal information, I believe that the privacy clause covers the disclosures.

It is my view that the privacy clause of the Illinois Constitution confers a general right to informational privacy.  As our supreme court has noted, "[a] person has a reasonable expectation that he will not be forced to submit to a close scrutiny of his personal characteristics, unless for a valid reason."  
Will County Grand Jury
, 152 Ill. 2d at 391-92, 604 N.E.2d at 935. The belief that the disclosure of personal information is covered by the privacy clause was also shared by members of the Bill of Rights Committee of the convention that enacted the Constitution of 1970.  One committee member specifically raised the example of the state compiling a database that listed height, weight, and age, indexed by social security number.  It was the opinion of the committee that such a compilation could well violate the proposed privacy clause.  3 RECORD OF THE PROCEEDINGS, SIXTH ILLINOIS CONSTITUTIONAL CONVENTION 1525.  Whether or not such a scheme actually violates the clause, clearly the drafters of our constitution believed that the privacy clause created a right to informational privacy that includes within its scope the compilation or disclosure of general personal information.

I conclude, therefore, that a person has a reasonable expectation, absent a valid justification to the contrary, that the State will not create an easily accessible database containing personal, though public, information.  The precedents indicate that a balancing test is appropriate to determine whether any particular disclosure violates the privacy guarantee. 
Kunkel, 
179 Ill. 2d at 538, 689 N.E.2d at 1055; 
Will County Grand Jury
, 152 Ill. 2d at 392, 604 N.E.2d at 935.  Specifically, the defendant's interest in his own privacy must be weighed against the State's asserted interest in disclosure and the scope of that disclosure.

Viewed in this context, the instant case is significantly similar to both 
Will Co. Grand Jury
 and 
Kunkel
.  In 
Will County Grand Jury
, the grand jury's attempt to subpoena evidence from persons absent a reasonable suspicion that those persons were involved in a crime was arbitrary and unreasonable.  
Will County Grand Jury
, 152 Ill. 2d at 400, 604 N.E.2d at 939. Arbitrary, too, was the statute in 
Kunkel
 that removed privilege protection from 
all
 medical records of a person filing a claim for damages, even records that had no relevance to the filed claim. As the court noted, disclosure of highly personal medical information "having no bearing on the issues in the lawsuit is a substantial and unjustified invasion of privacy." 
 Kunkel
, 179 Ill. 2d at 539, 689 N.E.2d at 1056.  The fatal flaw in each case was that the attempted or intended access swept too broadly.

I believe the dissemination of information in this case is unreasonable in two ways.  First, the database makes available information about individuals who pose no further danger to the community.  Second, the database makes the information available to individuals who have no conceivable need for it.  The State interest asserted as justification is the protection of the public from dangerous sex offenders.  I have no quarrel with this justification as a general matter.  The State has an obligation to protect vulnerable populations.  To effectuate this goal the State has mandated the registration of everyone convicted of certain sexual violations.  Undoubtedly, those subject to the provisions of the statute are easily distinguishable from the general population, since they have been convicted of a sexual offense.  However, there is a clear distinction to be drawn within the group between those who pose a continuing danger to society and those who do not.  The problem is that the statute draws no distinction between those two groups.

On one level, the statute involves only a minimal invasion of privacy because it only authorizes the distribution of information that is already in the public record.  If the person actually poses some future danger, this minimal invasion of privacy is reasonable in light of the public interest the legislature has attempted to serve by the Act's passage.  If, on the other hand, re-offense is highly unlikely, as appears to be the situation with Mr. Grochocki, the privacy invasion is 
un
reasonable.

It is unreasonable to allow the broad dissemination of information about non-dangerous former sex offenders, since those individuals retain a privacy interest in the information that is not outweighed by the asserted government interest.  Such dissemination does not serve the purpose of the legislation since these individuals pose no danger to the community.  Yet the statute does not distinguish between dangerous and non-dangerous offenders.  Because registration is mandatory and judges are given no discretion to determine which convicted offenders should and which should not be required to register, the statute sweeps too broadly.  For these reasons, I believe it violates the privacy guarantee of the Illinois Constitution.

The majority argues that the defendant has no privacy interest in the information contained in the database, because the information is already contained in the public record.  Under the majority's analysis, the State could create a DUI database, a traffic ticket database, a divorce database, or any other database utilizing information from court filings and the public record, without fear of running afoul of the privacy clause.

It could be argued that such databases would be unreasonable, and that the State could not articulate a reason to justify them.  I am inclined to agree with that analysis, and it conveniently illustrates my point in this case.  The State cannot articulate a reason to disseminate information about sex offenders who pose no further threat to the community.  The dissemination is only justified if it is tied to a legitimate need.  Absent any justification, the dissemination is an unreasonable invasion of privacy.  Such is the case here.

I also believe that, even assuming the defendant belongs on the database, the wide dissemination of the database on the internet violates the privacy clause.   By placing the registry on the internet, the State has made it available to people worldwide.  The information is available to those who have no need for it and who are in no danger from even a proven recidivist.  Such wide availability does not narrowly serve the governmental purpose of protecting the public from recidivist sex offenders, in part because the information is available to a vast group that has no need for it and derives no legitimate benefit from it.  Such extensive dissemination, I believe, is too broad to pass muster under the privacy clause. 

The legislature apparently shared this concern when the amendment that created the internet database was passed.  The statute states that "[t]he Department of State Police may require that a person who seeks access to the sex offender information submit information about himself or herself before permitting access to the sex offender information.  The Department of State Police may limit access to the sex offender information to information about sex offenders who reside within a specified geographic area in proximity to the address of the person seeking the information."  (730 ILCS 152/115 (West 2001)).  As yet, the Department of State Police has not enacted any limitations. It is apparent, though, that the problem of unlimited access was contemplated by the legislature.

I am unwilling to concede that the State has the unlimited right to create an electronic database of information about a class of individuals, just because that information is contained in the "public record."  This, however, is the position that the majority adopts.  The fact that the information is contained in the public record makes little difference to the analysis.  The public availability of documents at a courthouse is qualitatively different than a state created, electronic database made available on the internet.  While an individual does not generally have a privacy interest in public records, I believe that an individual's privacy interest is implicated by the widespread dissemination at issue here.  I find the majority's argument unpersuasive and I would reverse the trial court.

PROPORTIONATE PENALTIES CLAUSE

The defendant next argues that the statute violates the proportionate penalties clause of the Illinois Constitution.  The clause provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, Art. 1, §11.  A penalty violates the clause if it is cruel, degrading, or so wholly disproportionate to the offense committed as to shock the moral sense of the community.  
People v. Bailey
, 167 Ill. 2d 210, 236, 657 N.E.2d 953, 966 (1995)

Although the supreme court has held that the Registration Act and the Notification Act are not punitive in nature (
Malchow
, 193 Ill. 2d at 42, 739 N.E.2d at 440; 
People v. Adams
, 144 Ill. 2d 381, 386-90, 581 N.E.2d 637, 640-42 (1991)) those decisions predate the most recent amendments that allow publication of information on the internet.  The issue must, therefore, be addressed anew.

To determine whether a particular state action is punitive in nature, one must engage in a two part analysis.  First, it is appropriate to determine whether the legislature intended for the alleged sanction to be punitive. 
 Malchow
, 193 Ill. 2d at 420, 739 N.E.2d at 438.  The supreme court has already decided that the legislature intended prior versions of the Act to be non-punitive in nature. 
 Malchow
, 193 Ill. 2d. At 420, 739 N.E.2d at 438; Adams, 144 Ill. 2d at 387, 581 N.E.2d at 641.  There seems no compelling reason to find differently here. The court reasoned that the registration requirement and previous notification law were designed to "create an additional measure of protection" for children and the public. While it is true that the court assumed only limited notification when it reached its conclusion, (
Malchow
, 193 Ill. 2d at 420, 739 N.E.2d at 438), there is no reason to find differently in this case just because the notification requirement is more sweeping.  Remaining on the face of the statute is the express desire to protect the public from potential re-offenders.  The legislature has expanded the means by which it intends to achieve that goal, but there is no indication that it also intended to create a punitive scheme when it passed the amendments at issue here.

However, the statute may nonetheless be punitive, despite the intent of the legislature.  The second part of the analysis requires an examination of the effect of the statute, independent of the legislature's intent.  Even if the legislature did not intend for the "sanction" to be punitive, it will still be found punitive on a finding of the "clearest proof" that the statute's effect is so punitive that it negates the legislative intent. 
Malchow
, 193 Ill. 2d at 421, 739 N.E.2d at 439 (citing 
Kansas v. Hendricks
, 521 U.S. at 361, 138 L. Ed. 2d at 515, 117 S. Ct. at 2082).  To make this determination we examine whether 1) the "sanction" involves an affirmative disability or restraint, 2) the sanction has historically been regarded as a punishment, 3) the "sanction" comes into play on a finding of 
scienter
, 4) the operation of the sanction will promote retribution and deterrence, 5) the behavior to which the sanction applies is a crime, 6) an alternative purpose to which the sanction may rationally be connected is assignable to it, and 7) the sanction appears excessive in relation to the alternative purpose assigned.  
Malchow
, 193 Ill. 2d at 421, 739 N.E.2d at 439
 (citing 
Kennedy v. Mendoza Martinez
, 372 U.S. at 168-69, 9 L. Ed. 2d at 661, 83 S. Ct. at 567-68).

The registration and notification acts do not involve any affirmative restraints or disabilities.  They merely require a registrant to file with the Department of State Police and to submit certain information, with a continuing obligation to update some information when it changes.  These requirements are not disabilities or restraints, since they do not limit the registrant's freedom to act, but rather impose an obligation to perform certain acts.  Although it may be argued that registrants suffer from private discrimination because of their inclusion on the database, this argument does not relate to the instant question since it does not describe an 
affirmative
 disability created by the statute but rather asserts the existence of speculative collateral consequences of the statute.  
Malchow
, 193 Ill. 2d at 422, 739 N.E.2d at 439. Since there are no affirmative restraints, this factor weighs against a finding of punitive effect.

Next, we must determine whether the widespread publication of sex-offender information is something that traditionally has been viewed as punishment.  The court in 
Malchow
 believed that limited publication was not similar to traditional "public notification" punishments like branding, stockading, pillorying or banishment, (
193 Ill. 2d at 422, 739 N.E.2d at 439-40), basing
 its conclusion on the fact that the dissemination was limited to "school boards, child care facilities, and those likely to encounter sex offenders."  
Malchow
, 193 Ill. 2d at 422, 739 N.E.2d at 439-40
. 
The situation is different here to the extent that we are presented with widespread dissemination on the internet.  The information is not limited to those with an actual need to know, but is available to anyone, regardless of need. Although "the dissemination of such information has never been regarded as punishment when done in furtherance of a legitimate government interest" (
Malchow
, 193 Ill. 2d at 422, 739 N.E.2d at 440
 
(quoting 
E.B. v. Verniero
, 119 F.3d 1077, 1099-1100 (3rd Cir. 1997)), it is my view that it may be punishment if the dissemination does not actually serve the asserted interest.  Notification directed at those who have no need for it does not serve the interest of protecting the public.  Instead, it is no different from other punishments of public shame, such as pillorying and stockading. 

The U. S. Supreme Court has recently taken a different position on this issue, arguing that wide dissemination of sex offender information was "not so excessive a regulatory requirement as to become a punishment."  
Smith v. Doe
,  __ U.S. __, __, 155 L. Ed. 2d 164, 185,123 S. Ct. 1140, 1154 (2003).  Specifically, the Court found that the general mobility of state populations created a state interest sufficient to support statewide dissemination. 
Smith
,  __ U.S. at  __, 155 L. Ed. 2d at 185, 123 S. Ct. at 1154.  We are not bound by this reasoning, since the state can choose to allow greater protection under its own constitution to its affected citizens, and I would elect not to follow it.  In theory, the mobility of the population may create a need for wide dissemination, but when dissemination of the information is directed at those not proximate to the offender, the need is too speculative to render the effect of the statute non-punitive.  Rather, unlimited publication is stigmatizing and humiliating, much like punishments such as stockading and pillorying.

The same is true to the extent that registration and unlimited notification includes offenders who present no further danger to the community.  With regard to those offenders, the stated governmental interest does not justify notification.  There is no need to protect the public from those who pose no further danger.  Since the government purpose is not being served, the only effect with respect to non-dangerous offenders is to punish, by singling out the offender for special scrutiny and public shame.  The U.S. Supreme Court disagrees, and has found that the State has a legitimate right to make "reasonable categorical judgments" that the commission of certain crimes result in particular regulatory consequences, without the additional protection of an individualized risk assessment. 
Smith
,   __ U.S. at  __, 155 L. Ed. 2d at 184, 123 S. Ct. at 1153.  I disagree. Although the state may create rules that apply universally to a specific group, it must still proffer a reasonable justification for doing so.  Although sex offenders, statistically, have a higher rate of recidivism than other offenders, (
Connecticut Dept. of Public Safety v. Doe
, __ U.S. at  __, 155 L. Ed. 2d 98, 103, 123 S. Ct. 1160, 1163 (2003), this does not mean that potential recidivists cannot be distinguished from other offenders.  To the extent that offenders can be identified as presenting no further danger to society, the state cannot articulate a legitimate interest in publicizing their personal information.  For these reasons, I believe this factor weighs heavily in favor of finding the statutes punitive.

Next, I believe that registration and notification provisions apply to acts that are already criminal and only come into effect on a finding of 
scienter
.  Only those convicted of sex offenses can be placed on the database, and conversely, once a person has been convicted of a covered sex offense, it is impossible to remain unregistered.  In this way, registration and notification are inextricably linked to the commission of the underlying sex crime.  Since the underlying crime is so intimately tied together with the notification provisions, the 
scienter
 needed to convict one for the offense is also that necessary to make one subject to the notification provisions.  I would find that, under the current statutes, registration and notification are the unavoidable results of a finding of 
scienter
 and conviction in the underlying crime.  These factors weigh in favor of a finding of punitive effect. 

I now consider whether the sanction promotes retribution or deterrence.  Other courts have noted that notification statutes may have some deterrent effect, but have concluded that the deterrence was insignificant compared to the government interest served.  
Smith
, __ U.S. at  __, 155 L. Ed. 2d at 183, 123 S. Ct. at 1152; 
Malchow
, 193 Ill. 2d at 423, 739 N.E.2d at 440
.
 This is arguably true in a case involving limited notification, like 
Malchow
. Here, the unlimited notification, coupled with the failure of the statute to discriminate between dangerous and non-dangerous offenders, often serves no other purpose than to deter and exact retribution.  I believe this factor supports a finding of punitive effect.

We must also determine whether there is an alternative purpose to notification, other than punishment, that can rationally be associated with the law.  The alternative purpose advanced here is that the Acts allow the public to take precautions against the dangers of recidivist sex offenders.  The state argues that the ease with which the public can access offender information on the internet enhances the ability of the public to protect itself.  I believe that this justification can rationally be associated with the Acts. 

However, we must also determine whether the law is excessive in relation to this alternative purpose.  I believe that it is. As noted above, the Acts make no attempt to distinguish between offenders who present an ongoing danger and those who do not. Also, the Acts mandate that the information be widely distributed on the internet, making the database available to people who have no conceivable need for it.  This strikes me as extremely excessive and unwarranted.  It would not be difficult to more carefully tailor the law to achieve the interest advanced by the State.  Although it may achieve that goal now, it does so while at the same time sweeping too broadly and punishing individuals who should not be subject to the Acts. I believe this factor warrants a finding of punitive effect.

Overall, I would find that most of the factors in the 
Mendoza-Martinez
 test warrant a finding that the Acts, while not intended to be punitive, in fact have punitive effects. Therefore, it is my conviction that internet dissemination of sex offender information, in some cases at least, and specifically in the case of David Grochocki, amounts to punishment.  Nevertheless, this does not end our inquiry, since we must also determine whether the punishment is disproportionate.

A penalty is disproportionate when it is "cruel, degrading, or so wholly disproportionate to the offense committed as to shock the moral sense of the community.  
People v. Bailey
, 167 Ill. 2d 210, 657 N.E.2d 953 (1995).  I believe that the punishment of being placed on the sex offender internet database is degrading, to the extent that the resulting notification is more extensive than necessary to serve the State's asserted interest and to the extent that it includes those within its reach who do not present any further danger to the community. Under those circumstances, notification does nothing more than to humiliate and subject to public scorn those required to register. No interest is served and the punishment, which lasts for at least ten years past any prison time served, and in some cases for the rest of the offender's life, is entirely disproportionate to the offense and violates our constitution.  I would find that the Sex Offender Registration Act and the Sex Offender and Child Murderer Notification Act, violate Article one, Section 11 of the Illinois constitution, and would reverse the finding of the trial court.

DUE PROCESS

The final constitutional challenge to the statute is that it violates the due process clause of the Illinois Constitution.  The constitution provides that "[n]o person shall be deprived of life, liberty or property without due process of law nor be denied the equal protection of the laws." Ill. Const. 1970, Art. I, §2. Illinois courts "may, in construing the Illinois Constitution's guarantee of due process, look for guidance and inspiration to constructions of the Federal due process clause by the Federal courts, [however] the final conclusions on how the due process guarantee of the Illinois Constitution should be construed are for [Illinois courts] to draw." 
Rollins v. Ellwood
, 141 Ill. 2d 244, 275, 565 N.E.2d 1302, 1316 (1990).

The defendant argues that community notification represents him as a danger to the community, and that the Act does not provide him a method to rebut that presumption.  According to the defendant, this violates the "stigma plus" test derived from 
Paul v. Davis
, 424 U.S. 693, 96 S. Ct. 1155, 47 L. Ed.2d 405 (1976). For the following reasons, I agree.    

To state a claim for government defamation, the plaintiff must show 1) the utterance of a statement about him or her that is sufficiently derogatory to injure his or her reputation, 2) that the statement is capable of being proved false, and that he or she claims it is false, and 3) some tangible and material State-imposed burden or alteration of his or her status or of a right in addition to the stigmatizing statement.  
Paul
, 424 U.S. at 701-02, 710-11, 96 S. Ct. at 1160-61, 1165-66, 47 L. Ed. 2d at 419. 

The defendant contends that the registration and notification requirements of the statute pose a significant threat to a liberty interest.  Specifically, he argues that his inclusion on the sex offender website asserts by implication that he is a continuing danger to the community, and that he is entitled to a hearing to disprove the implication, and to have himself removed from the site.  Evidence presented at trial tended to indicate that the defendant presents a virtually non-existent chance that he will re-offend.  Therefore, it is argued, he and those similarly situated deserve an opportunity to prove that they are not a danger to the community.  The defendant believes that the implication of dangerousness amounts to a governmental defamation that runs afoul of the Illinois due process guarantee.

The online sex offender database does not directly assert that those individuals included pose a present danger to the community.  However, the website also does not indicate that registrants are not necessarily dangerous.  The site is silent on the State's view of the threat posed by registrants.  It is noted, however, that the purpose of sex offender registration is to protect the public against the danger posed by sex offenders. 
People v. Malchow
, 306 Ill. App. 3d  665, 671, 714 N.E.2d 583, 588. Absent a concern that those convicted of sex offenses pose some greater threat to the public than the ordinary citizen or indeed the "ordinary" felon, there would presumably be no need for community notification.  Implicit in the inclusion of an individual on the sex offender registration website is an understanding that the registrant presents a heightened threat to the community.

The representation that an individual is a continuing danger to the community because of a prior conviction of a sex offense, without some level of proof that the statement is true, is sufficiently injurious to amount to a governmental defamation. I have no doubt that the allegation that an individual presents a danger to the community, and in particular to the most vulnerable elements of the population, will tend to damage the reputation of the individual at whom the assertion is directed.  Those subject to such an assertion may find themselves (and consequently their families) isolated from the mainstream of society and subject to discrimination in employment, housing and in all manner of social interaction.  To be clear, I wish to emphasize that the governmental defamation here is not the assertion that an individual has been convicted of a sex offense, but rather that the individual poses an ongoing danger to society.  I would find, then, that inclusion on the internet database and the related implicit characterization of dangerousness is sufficiently derogatory to meet the first part of stigma plus. 

I also would find that the Acts impose a tangible and material State-imposed burden or alteration of the registrants' rights and status.  The registration act requires those convicted of sex offenses to register with the State, and to continually update pertinent information for a fixed period of time.  In some cases this period lasts for 10 years, and in other cases, the burden to update lasts for the remainder of the registrant's life.  (730 ILCS 150/7 (West 2002)), Registrants are required to notify the state when they move or change jobs, (730 ILCS 150/6 (West 2002)) and are required to submit and update photographs. (730 ILCS 150/8 (West 2002)).  These burdens are not shared by the rest of the population, not even by the rest of the criminal population, but represent a significant State-imposed intrusion into the lives of registrants.  They are sufficient to satisfy the second element of the stigma plus test.

I do not dispute that community notification can be a valuable tool for protecting vulnerable populations from recidivist sex offenders.  Without a doubt, there are individuals who pose a significant danger to the public.  This concern has led to the enactment of similar notification laws in each of our sister states.  
Doe v. Department of Public Safety
, 271 F.3d 38, 42 (2nd Cir. 2001).  That being said, the State casts the net too broadly when it requires registration and online notification of convicted sex offenders who present no further threat to the community.  Especially onerous is the fact that the notification is directed to the entire world community, rather than targeted to segments of the population that are potentially threatened by recidivist sex offenders. 

It is my conclusion that registrants are entitled to an opportunity to prove that they are not a danger to society, and are not at risk to reoffend, and to have themselves exempted from the requirements of the registration and notification law.  I am mindful of recent U. S. Supreme Court precedent that would appear to reach a different conclusion than the one I have reached today.  See
 Department of Public Safety v. Doe
, __ U.S. __, 155 L. Ed. 2d 98, 123 S. Ct. 1160 (2003).

As a preliminary matter, I note that 
Doe
 is not binding, since the defendant's claims are based on protections provided by the Illinois constitution.  Even were that not the case, however, 
Doe
 is factually distinguishable from this case.  In arriving at its decision, the court in 
Doe
 relied heavily on the fact that the Connecticut sex offender database website explicitly stated that the State had not determined, and made no representations, that registrants posed a danger to the community.  The Connecticut statute itself contained a similar disclaimer.  
Doe
, __ U.S. at __, 155 L. Ed. 2d at 103-04, 123 S. Ct. at 1163. As already mentioned, the Illinois website and statute do not contain disclaimers.  Instead, registrants are included in the database without comment, allowing the reasonable conclusion by the viewer that those included are a danger to the public.

Also, I have serious doubts as to whether a disclaimer of any kind would be sufficient to rebut the presumption of dangerousness that inheres in the fact of inclusion in the database.  The Court noted that the Connecticut legislature has made a determination that registrants should be in the database "solely by virtue of their conviction record and state law" 
Doe
, __ U.S. at __, 155 L. Ed. 2d at 104, 123 S. Ct. at 1163 (quoting Conn. Gen. Stat. §§ 54-257, 54-258).  The Court concludes that the question of whether a registrant in currently dangerous is not relevant to the statutory scheme and therefore not relevant to due process. 
Doe
, __ U.S. __, 155 L. Ed. 2d at 105, 123 S. Ct. at 1165. 

I believe the court's reasoning ignores the fact that the statute is premised on the unstated understanding that convicted sex offenders pose a greater threat to the public than other individuals.  Otherwise, there would be no need to notify the public of their presence in the community.  The Connecticut statute, like the one in Illinois, has created a rigid distinction in which convicted sex offenders are presumed dangerous enough to warrant the inclusion of a picture, address, and other identifying information on an internet website.  While I believe that the State may be warranted in requiring registration and notification in cases where an actual or probable risk of harm exists, it is not justified in requiring the registration of individuals who pose no further danger.  This, in my opinion,  violates due process.  Without the possibility of an individualized determination of the danger posed by registrants, I conclude that the registration requirement is too broad, even in the presence of a disclaimer like the one in 
Doe
.  I respectfully disagree with the majority’s finding that the Acts, as amended, do not violate due process, and I would reverse on this issue.  

CONCLUSION

For the foregoing reasons, I would find that the Illinois Sex Offender Registration Act and the Illinois Sex Offender and Child Murderer Community Notification Act violate the privacy, proportionate penalties and due process clauses of the Illinois constitution.  The Act implicitly asserts that registrants pose a danger to the community, which may or may not be true. Registrants must be allowed an opportunity to rebut the presumption of dangerousness, and to demonstrate, if possible, that they pose no further threat to the community.  If registrants do not pose a further danger to the community, they have an interest in the privacy of their personal information that outweighs the State's interest in its disclosure.  Also with respect to privacy, internet publication is, by its very nature, far more extensive than required to serve the governmental purpose, and is therefore unreasonable.  Furthermore, to the extent that the database includes those who are not a danger to the community, the acts punish those individuals in a manner disproportionate to the crime for which they were originally convicted.  As I would have found that the Act violates the Illinois constitution, I would not have reached the defendant's sentencing challenge. I respectfully dissent.