(No. 70462

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. DANIEL ADAMS, Appellant.

*Opinion filed October 17, 1991.*

G. Joseph Weller, Deputy Defender, and Thomas A. Lilien, Assistant Defender, of the Office of the State Appellate Defender, of Elgin, and Kurt Christensen, law student, for appellant.

Neil F. Hartigan and Roland W. Burris, Attorneys General, of Springfield, and James E. Ryan, State's Attorney, of Wheaton (Kenneth R. Boyle, William L. Browers and Cindy N. Schneider, of the Office of the State's Attorneys Appellate Prosecutor, of Elgin, of counsel), for the People.

JUSTICE CUNNINGHAM delivered the opinion of the court:

## Background

On December 2, 1987, defendant, Daniel Adams, pled guilty and was convicted in Du Page County of one count of criminal sexual assault. (Ill. Rev. Stat. 1987, ch. 38, par. 12—13(a)(3).) The victim was the defendant's daughter, who was 12 years of age when the act was committed.

In exchange for the plea of guilty, the defendant was sentenced to three years of imprisonment, to be served concurrently with a three-year term from Stephenson

County. The latter sentence arose through a probation violation stemming from a 1985 conviction for aggravated criminal sexual abuse. (Ill. Rev. Stat. 1987, ch. 38, par. 12—16(b).) The defendant's daughter was also the victim in that conviction.

After the plea was entered, the prosecuting attorney informed the court that, pursuant to the Habitual Child Sex Offender Registration Act (the Registration Act) (Ill. Rev. Stat. 1987, ch. 38, pars. 221 through 230), the defendant would be required to sign a form to comply with the statute. The court then ordered the defendant to sign the form, and the defendant complied.

In May 1988, the State filed a motion to have the defendant certified as a habitual child sex offender. The defense moved to dismiss on the grounds the court no longer had jurisdiction and the Registration Act violated the principle of equal protection. The court subsequently requested briefs from the parties on these issues.

The opposing motions were heard in July 1988, at which time the court denied the defendant's motions with respect to both issues. The court delayed certifying the defendant as a habitual child sex offender until he could be brought before the court.

On August 18, 1988, the defendant appeared before the trial court. He was advised of his duty to register as a habitual child sex offender, and the court then entered an order certifying him as such.

The defendant filed a timely appeal to the appellate court. In response to the issues presented by the defendant, the appellate court affirmed the judgment. (198 Ill. App. 3d 74.) The defendant, having properly appealed to this court, raises essentially the same issues. They are: (1) whether the Registration Act is cruel and unusual punishment in violation of the eighth amendment to the United States Constitution; (2) whether the Registration Act denies equal protection and due process in violation

of the fourteenth amendment to the United States Constitution, and article I, section 11, of the Illinois Constitution; and (3) whether the trial court failed to certify the defendant as a habitual offender in a timely manner.

The legislature passed the statute in question in response to concern over the proliferation of sex offenses against children. The Registration Act was designed to aid law enforcement agencies by requiring habitual child sex offenders to register with the local law enforcement authorities whenever they move. (84th Ill. Gen. Assem., House Proceedings, June 23, 1986, at 208.) This requirement lasts for 10 years upon completion of the parole or release from prison. (Ill. Rev. Stat. 1987, ch. 38, par. 227.) The registration itself consists of a signed statement by the person giving such information as may be required by the Department of State Police. (Ill. Rev. Stat. 1987, ch. 38, par. 228.) This may include the fingerprints and photograph of the person registering. Failure to register is a Class A misdemeanor. (Ill. Rev. Stat. 1987, ch. 38, par. 230.) The information supplied is to be held in confidence by the law enforcement agency, and the unauthorized release of the supplied information is a Class B misdemeanor. (Ill. Rev. Stat. 1987, ch. 38, par. 229.) Those convicted of sexual assault or sexual abuse as defined in sections 12—13 through 12—16 of the Criminal Code of 1961, after a prior conviction of any of the above in Illinois or a substantially similar offense in another State, are subject to the registration requirements of the Registration Act. Ill. Rev. Stat. 1987, ch. 38, par. 222.

## Eighth Amendment

The defendant argues that the statute is a punishment, cruel and unusual in nature, and therefore violative of the Federal and State Constitutions.

The statute prescribes a duty on the part of an individual on the basis of a criminal conviction. The question to be answered is whether this duty is punishment. Traditional notions of punishment aid little in the resolution of this issue since the statutory duty is neither imprisonment nor a fine. It imposes no restraints on liberty or property. In short, by traditional definition, the duty to register is not punishment.

For this analysis *Trop v. Dulles* (1958), 356 U.S. 86, 2 L. Ed. 2d 630, 78 S. Ct. 590, is the most appropriate authority, due to its focus on the eighth amendment. *Trop* concerned the constitutionality of section 401 of the Nationality Act of 1940 whereby, *inter alia,* a soldier convicted of desertion could be summarily stripped of his United States citizenship. The petitioner challenged the validity of the statute based upon an eighth amendment claim of cruel and unusual punishment.

*Trop* determined that the purpose of the statute should be evaluated in order to determine whether it is penal in nature. (*Trop,* 356 U.S. at 96, 2 L. Ed. 2d at 639, 78 S. Ct. at 595.) The debates of the legislature here show the purpose of the statute to be nonpenal. Specifically, the legislature sought to create an additional method of protection for children from the increasing incidence of sexual assault and sexual abuse. (84th Ill. Gen. Assem., House Proceedings, June 23, 1986, at 208.) The Registration Act was designed to aid law enforcement agencies. With the registration requirement, the habitual offender's address is readily available to law enforcement agencies, which may then question and, if necessary, detain him under appropriate circumstances.

*Trop* determined that the severity of the disability as well as all the circumstances surrounding the legislative enactment may also be relevant factors in concluding whether a disability is penal. (*Trop,* 356 U.S. at 96, 2 L. Ed. 2d at 639-40, 78 S. Ct. at 595-96.) The disability im-

posed by the Registration Act falls short of being severe. Apart from the relatively simple act of complying, the requirement is an innocuous duty compared to the potential alternative of spending an extended period of years in prison.

The circumstances surrounding the enactment of the statute reveal a legislature deeply concerned with the proliferation of sex offenses against children. Aside from the education of the children themselves, the most logical alternative available to the legislature was to monitor the movements of the perpetrators by allowing ready access to crucial information. The Registration Act serves this purpose.

Defendant, however, suggests a case to aid in our determination. *Kennedy v. Mendoza-Martinez* (1963), 372 U.S. 144, 9 L. Ed. 2d 644, 83 S. Ct. 554, has set forth, in the context of the fifth and sixth amendments to the Federal Constitution, various tests to determine whether a law is penal or regulatory in character. These tests, however, are for use when conclusive evidence of legislative intent is unavailable. (*Kennedy*, 372 U.S. at 169, 9 L. Ed. 2d at 661, 83 S. Ct. at 568.) As we have stated, the intent with respect to the Registration Act is clearly nonpenal in nature, focusing not on the burden to any particular defendant, but rather on the advantages given to law enforcement agencies in the protection of children.

The defendant asserts that compliance with the Registration Act will subject him to interrogation and detention whenever a sex offense occurs. However, as the appellate court pointed out, the registrant's constitutional safeguards will still be in place to protect him from unwarranted police harassment. 198 Ill. App. 3d at 82.

Additionally, we find it significant that the legislature chose not to specifically address problems particularly associated with pedophiles. No attempt is made in the

statute to correct the behavior of sex offenders. Although the legislature took note of the recidivist nature of sex offenders (84th Ill. Gen. Assem., House Proceedings, June 23, 1986, at 217), it included no provision in the statute mandating counseling or any other remedial measure particularly appropriate to pedophiles. (*Cf.* Ill. Rev. Stat. 1987, ch. 38, par. 11—20.1(d) (mandating psychiatric evaluations for repeat pornography offenders).) The absence of such corrective measures in the statute, while not controlling, further impels us to conclude it is nonpenal.

The disability fails to meet the guidelines set forth for determining what constitutes punishment. For these reasons, the Registration Act does not constitute punishment under the eighth amendment.

Defendant next challenges the statute on the basis of article I, section 11, of the Illinois Constitution. He asserts that the Registration Act is a disproportionate penalty to the crime committed in that it requires him to register even after his debt to society has been paid. The Registration Act is clearly less burdensome upon an individual than an extended jail term and is not a disproportionate penalty under the Illinois Constitution.

Assuming, *arguendo*, the disability is punishment, it would nevertheless fail to meet the requirements of cruel and unusual punishment. Defendant argues the statute is cruel in that it places a stigma upon him after his debt to society has been paid through incarceration. We fail to see how any stigma attaches to a registrant that is not already present through his own actions. Although required to register, the information conveyed to law enforcement officials concerning the registrant's criminal history is already available in the public record. The Registration Act simply makes that information more readily available to the police. Furthermore, the law enforcement community is prohibited from disseminating

the information to the public at large on pain of criminal sanctions. The existence of a "stigma" requires that the knowledge of the registrant's past transgressions be conveyed to the general public. Since it is a criminal offense for law enforcement officials to convey this information to the public, it is unlikely the information the registrant supplies will be distributed to the public, and so no stigma attaches.

Defendant also argues that the statute is unusual since it was not found at common law. That a punishment may be different does not equate it with being unusual under the United States Constitution. Although circumstances may arise in which a punishment may be unusual enough to violate the eighth amendment, those circumstances are not present here.

## Fourteenth Amendment

Defendant's next contentions of error by the lower courts concern due process and equal protection. He asserts that the statute irrationally and arbitrarily differentiates among various sex offenders to his detriment. We disagree.

### A. Due Process

When a statute bears a reasonable relationship to a public interest to be served, and the means adopted are a reasonable method of accomplishing the desired objective, it will be upheld. (*People v. Lindner* (1989), 127 Ill. 2d 174, 180.) As the legislative debates indicate, the public interest to be served by the Registration Act is the assistance to law enforcement in the protection of children. The statute serves this purpose by providing ready access to information on known child sex offenders. We find nothing unreasonable in the statute's method of serving its purpose.

Defendant believes the statute to be arbitrary and cites *Lindner* to support that argument. In *Lindner* this court declared a statute mandating the revocation of drivers' licenses for convicted sex offenders to be unconstitutional. The statute failed to satisfy the requirements of due process since the disability did not relate to the specified conduct. There was no rational relationship between sex offenders and safe driving, and on that basis the statute was found unconstitutional. (*Lindner*, 127 Ill. 2d at 183.) That rationale is inapposite here. There is a direct relationship between the disability, the registration of child sex offenders, and the purpose served by the statute, the protection of children.

## B. Equal Protection

A claim that a statute violates the principles of equal protection requires an analysis of whether a substantial right is involved, or whether the statute discriminates against a suspect class. (*People v. Esposito* (1988), 121 Ill. 2d 491.) When neither of these factors comes into play, the equal protection standard, like due process, utilizes a rational basis test, which prevents the implementation of a statute if it irrationally differentiates between persons similarly situated. (*Jenkins v. Wu* (1984), 102 Ill. 2d 468.) The defendant asserts the Registration Act is an underinclusive statute which omits other sex offenders similarly situated, among them child pornographers (Ill. Rev. Stat. 1987, ch. 38, par. 11—20.1) and those who would use children for prostitution (Ill. Rev. Stat. 1987, ch. 38, pars. 11—15.1, 11—19.1, 11—19.2).

When the legislature creates a statute, it is not required to solve all the evils of a particular wrong in one fell swoop. The legislature may tailor a statute to the particular problem it is seeking to solve. (*Chicago National League Ball Club, Inc. v. Thompson* (1985), 108 Ill. 2d 357.) Such is the case with the Registration Act.

Whereas the broader purpose of the statute is the protection of children from habitual child molesters, it is clear the direct victimization of children is the evil sought to be corrected. Although child pornographers may fit into this category, it is possible their motive may be profit-oriented rather than sex-oriented. A like explanation would apply to those who would seek to use children for prostitution. Should either group's actions move into the more narrowly tailored category of child molester, then it too could be prosecuted under the appropriate statutes and fall within the guidelines of the Registration Act. Since it was the direct victimization of children with which the legislature was concerned, the design of the statute could rationally be limited to those who would fall into this category.

## Certification Procedure

The statute requires the trial court to include in the order of commitment the certification that the defendant is a habitual child sex offender. (Ill. Rev. Stat. 1987, ch. 38, par. 222(A).) Although this certification was not included in the order of commitment, this error was harmless and resulted in no prejudice to the defendant.

At the time of sentencing, it is incumbent upon the trial court to recognize the pertinent criminal history of the defendant in preparation for compliance with the Registration Act. Such recognition must necessarily take place after the prosecution has brought the defendant's criminal history to the court's attention. The record reveals that, although the State did not directly connect the defendant's previous child sex offense to compliance with the Registration Act, the information was conveyed to the court during the sentencing hearing. Furthermore, the State did request the court to order the defendant to sign a form directly relating to the Regis-

tration Act, and the defendant did, in fact, sign the form.

The statute provides that anyone convicted a second or subsequent time of any of the offenses designated in sections 12—13 through 12—16 of the Criminal Code (Ill. Rev. Stat. 1987, ch. 38, par. 222(A)) shall be required to register under the provisions of the statute (Ill. Rev. Stat. 1987, ch. 38, par. 223). The defendant's record makes him subject to this provision of the Registration Act. This language allows for no discretion on the part of the trial court in determining whether a defendant may or may not be required to register under the statute. As the appellate court recognized, once a defendant has been sentenced and placed into the custody of the Department of Corrections, the court rendering judgment and imposing sentence loses jurisdiction over the case and is without power to vacate, set aside or modify the judgment. (198 Ill. App. 3d at 77.) However, compliance with the Registration Act requires none of the above actions by the court. Whether a judgment is vacated, set aside, or modified is subject to the discretion of the court. Compliance with the Registration Act, in an instance such as this where both convictions took place in Illinois, requires no discretion but merely the ministerial function of carrying out the statute's requirements.

Even though the trial court failed to include the certification order pursuant to the Registration Act, all necessary findings with respect to the statute were made at the time of sentencing and the defendant was required to sign the habitual child abuse offender form. When the court subsequently certified the defendant in August 1988, it was doing so only to make the record reflect that which had been previously ascertained during the sentencing hearing. The omission of the certification order was merely an administrative oversight having no effect on any substantive right enjoyed by the defendant.

Although not so designated, the order signed in August of 1988 was essentially a *nunc pro tunc* order. This type of order is designed to allow the record to reflect that which was already done previously, but which was omitted from the record. (*In re Estate of Young* (1953), 414 Ill. 525.) The record from the December 1987 sentencing hearing shows that all necessary facts were recorded to bring the defendant within the Registration Act's requirements, and that the defendant was required to sign and did sign a form designating him as a habitual child sex offender. All that was missing was the certification order itself. Since a trial court does not lose jurisdiction to correct its records (*People v. Glenn* (1962), 25 Ill. 2d 82), the failure by the trial court to include the certification in the order of commitment was harmless error and does not affect the defendant's duty to comply with the Registration Act.

Additionally, even were we to find that the trial court erroneously delayed the certification, it would not influence the outcome. Although the statute specifies the time for certification as the sentencing hearing, we find the essential requirement concerning certification is that the registrant be advised of his duty to register before the time for registration occurs. Absent action prejudicial to the defendant, errors before this point are harmless. The apparent purpose behind requiring certification upon sentencing is merely judicial economy. Although this economy was obviously missing here, its failure is not cause for preventing the statute's application.

For the above reasons, we find the Registration Act constitutional, and the defendant is required to comply with its provisions. The judgments of the appellate and circuit courts are therefore affirmed.

*Judgments affirmed.*