JUSTICE SCHMIDT, dissenting: The trial court, noting that it had already found respondent unfit for trial and that no probability existed that respondent would become fit within one year, proceeded to a discharge hearing pursuant to section 104—25 of the Code of Criminal Procedure of 1963 (the Code) (725 ILCS 5/104—25 (West 2008)). At that hearing, the court entered a judgment of acquittal pursuant to section 104—25(b) (725 ILCS 5/104—25(b) (West 2008)) on behalf of respondent for the offense of aggravated criminal sexual assault but did not acquit respondent of the aggravated criminal sexual abuse charge. Section 2(A)(1)(d) of the Registration Act clearly indicates that one qualifies as a sex offender if he: (1) is charged pursuant to Illinois law; (2) with a sex offense; and (3) is subject to a finding not resulting in an acquittal pursuant to section 104—25(a) of the Code. 730 ILCS 150/2(A)(1)(d) (West 2008). S.B. meets all the requirements of a sex offender as defined by that section. The majority concludes that the legislature only intended for juveniles adjudicated delinquent to register pursuant to the Registration Act. This interpretation, by necessity, means that the legislature specifically intended to exclude juveniles similarly situated as respondent from registering as sex offenders, that is, juveniles charged with a sex offense, who have been found unfit for trial but against whom proof beyond a reasonable doubt exists to support the State’s contention that the juvenile committed the offense. A trial court cannot enter “a finding not resulting in an acquittal” under section 104—25 of the Code unless the evidence presented proves respondent guilty beyond a reasonable doubt. 725 ILCS 5/104—25(b) (West 2008). The majority relies heavily upon the fact that section 3—5(c) of the Registration Act allows some juveniles who have been adjudicated delinquent to petition for early termination of sex offender registration. 730 ILCS 150/3—5(c) (West 2008). One could reasonably question the wisdom of the scheme chosen by the legislature, which allows juveniles adjudicated delinquent to petition to reduce the term for which they must register while not providing the same mechanism to juveniles that are unfit for trial but subject to a finding not resulting in an acquittal. However, one cannot say that this scheme points to the inescapable conclusion that the legislature did not intend for juveniles such as respondent to register under the Registration Act. A juvenile adjudicated delinquent has no right to a shorter term of registration; section 3—5 simply allows him to petition to reduce the term. I also reject respondent’s argument that his discharge hearing was not an actual discharge hearing under section 104—25 of the Code. 725 ILCS 5/104—25 (West 2008). S.B. asserts that since a juvenile proceeding is not criminal in nature and section 104—25 is found in the Code, he “was not a ‘defendant’ as referred to in section 104—25.” The Juvenile Court Act states that, “In all procedures under this Article, minors shall have all the procedural rights of adults in criminal proceedings, unless specifically precluded by laws that enhance the protection of such minors. Minors shall not have the right to a jury trial unless specifically provided by this Article.” 705 ILCS 405/5—101(3) (West 2008). A section 104—25 discharge hearing is a procedural right afforded adults. 725 ILCS 5/104—25 (West 2008). As such, it is incorporated into the Juvenile Court Act by section 5—101(3) and the discharge hearing in this matter took place in accordance with section 104—25 of the Code. Respondent further argues that section 2(A)(1)(d) cannot apply to him as it only applies to those “charged pursuant to Illinois law” of committing a sex crime. 730 ILCS 150/2(A)(1) (West 2008). He claims he was never “charged” with a crime as he was named in a juvenile petition and not a complaint, information or indictment under the Code. I disagree. The petition alleged, inter alia, that respondent was delinquent on the basis of committing the act of aggravated criminal sexual assault and aggravated criminal sexual abuse. Undoubtedly, there are differences between a petition alleging delinquency and an information or indictment. See In re J.A.J 243 Ill. App. 3d 808, 810 (1993) (“While the allegations of a petition for wardship need not meet the standards of a criminal charging instrument, the petition must apprise the accused of the precise offense charged with sufficient specificity to prepare his defense.”) (citing In re S.R.H., 96 Ill. 2d 138 (1983)). The Juvenile Court Act sets forth the manner in which juveniles are accused of committing offenses. 705 ILCS 405/5—120 (West 2008). Section 5—120 of the Juvenile Court Act notes that proceedings “may be instituted under the provisions of this Article concerning any minor who *** has violated or attempted to violate, regardless of where the act occurred, any federal or State law or municipal or county ordinance.” 705 ILCS 405/5—120 (West 2008). While these proceedings may be initiated by filing a petition instead of an indictment or information, our supreme court has routinely referred to respondents in such proceedings as having been “charged” with offenses. See People ex rel. Davis v. Vazquez, 92 Ill. 2d 132, 137 (1982) (“The petition charged Michael, then 15½ years old, with two counts of murder in the shooting deaths of Vincent and Gregory Jackson on January 26, 1981.”); In re A.G., 195 Ill. 2d 313, 314 (2001) (“On February 2, 1999, the State filed a delinquency petition against the 16-year-old respondent, charging him with two counts of residential burglary (720 ILCS 5/19—3 (West 1998)), one count of unlawful possession of a controlled substance (720 ILCS 570/402(c) (West 1998)), and one count of theft (720 ILCS 5/16—1(a)(1)(A) (West 1998)).”); People ex rel. Hanrahan v. Felt, 48 Ill. 2d 171, 172 (1971) (“two delinquency petitions were filed in the circuit court of Cook County in the interest of Donald Vance, a minor, age 14, which charged him with the offense of armed robbery and rape”). Respondent herein was alleged to have committed these crimes in the manner proscribed by Illinois law in which juveniles are “charged” with offenses. See 705 ILCS 405/5—520 (West 2008). I find no support for the assertion that section 2(A)(1)(d) of the Act cannot apply to respondent as he was never “charged pursuant to Illinois law.” Respondent falls within the definition of a sex offender as found in section 2(A)(1)(d) of the Registration Act and, therefore, is subject to the Registration Act’s registration requirements. Because I disagree with the majority’s conclusion, I must address respondent’s additional arguments. Equal Protection Respondent alleges that an interpretation of section 2(A)(1)(d) of the Registration Act finding it applies to juveniles violates principles of equal protection. He claims such an interpretation impermissibly creates two classes of juvenile offenders: one that can petition to be removed from the sex offender registry after either 2 or 5 years, and another that must remain on the registry the entire 10 years. This impermissibly violates notions of equal protection, respondent claims, by affording the first class of offenders more “rights,” even though they have been adjudicated delinquent following a full hearing in accordance with all the protections provided in the Juvenile Court Act (705 ILCS 405/1—1 et seq. (West 2008)), than the second class of offenders, who have been “found guilty” of nothing. The State posits that respondent’s interpretation of the statutes “would unequivocally be a violation of the equal protection rights of the adjudicated delinquent juvenile, because, while both situations involve juvenile sex offenders, respondent’s argument treats them differently” where the State’s interpretation treats them the same by requiring both to register. The State continues that while one group, the adjudicated delinquent group, may be allowed to reduce its term of registration, there is no guarantee in the statute that the term will be reduced. The ability to petition for a reduced term after two or five years, the State claims, is insufficient to create an equal protection violation. However, the State continues, the mandate suggested by respondent that one group register and another need not register is enough to create such a violation. An issue concerning the constitutionality of a statute presents questions of law, which we review de novo. In re D.W., 214 Ill. 2d 289 (2005). “When confronted with a claim that a statute violates constitutional guarantees of due process or equal protection, a court must first determine the nature of the right purportedly infringed by the statute. [Citations.] Classification of the right affected is critical because the nature of the right dictates the level of scrutiny courts employ in determining whether the statute in question passes constitutional muster. Unless a fundamental constitutional right is implicated, the rational basis test applies, and the statute will be upheld so long as it bears a rational relationship to a legitimate state interest.” In re D.W., 214 Ill. 2d at 310. The right implicated in the instant case involves an individual’s right to be free from having to register as a sex offender pursuant to an order entered under section 2(A)(1)(d) of the Registration Act. 730 ILCS 150/2(A)(1)(d) (West 2008). Our supreme court has determined that the registration requirements of the Registration Act do not infringe on “fundamental” rights and are therefore subject to the rational basis test. In re J.W., 204 Ill. 2d 50 (2003). As such, the Registration Act’s registration requirement will be upheld so long as it bears a rational relationship to a legitimate state interest. J.W., 204 Ill. 2d at 67 (quoting People v. Adams, 144 Ill. 2d 381, 390 (1991)). In People v. Adams, 144 Ill. 2d 381 (1991), our supreme court noted that an earlier version of the Registration Act was passed “in response to concern over the proliferation of sex offenses against children” and was designed to aid law enforcement agencies by requiring sex offenders to register with local law enforcement authorities. Adams, 144 Ill. 2d at 386. The intent of the legislature when enacting the Registration Act was “to create an additional method of protection for children from the increasing incidence of sexual assault and sexual abuse.” Adams, 144 Ill. 2d at 387. The Adams court held that the public interest to be served by the Registration Act was the assistance of law enforcement in the protection of children and it served that purpose by providing officers ready access to information on known child sex offenders. Adams, 144 Ill. 2d at 390. The Adams court concluded that there was nothing unreasonable in the statute’s method of serving its purpose given the direct relationship between the registration of sex offenders and the protection of children. Adams, 144 Ill. 2d at 391. Undoubtedly, the State has a legitimate interest in protecting children. The Registration Act’s registration requirements as applied to sex offenders as described in section 2(A)(1)(d), be they adult or juvenile, bears a rational relationship to that interest. I acknowledge that respondent, unlike a juvenile adjudicated delinquent, would not be able to apply for termination of his registration in five years. See 730 ILCS 152/121 (West 2008); 730 ILCS 150/ 3—5(c) (West 2008). However, this dichotomy does not violate his equal protection rights. “Equal protection requires the government to deal with individuals who are ‘similarly situated’ in a similar manner. [Citation.] The equal protection clause is triggered when the law ‘lays an unequal hand on those who have committed intrinsically the same quality of offense.’ [Citation.] A claim that a statute violates the equal protection clause requires the determination of whether a fundamental right is involved or whether the statute discriminates against a suspect class. [Citation.] If neither factor is involved, the court uses the rational basis test to determine whether the statute irrationally differentiates between persons similarly situated. [Citation.] Under the rational basis test, the statutory classification need only bear a rational relationship to a legitimate state goal. [Citation.] An equal protection challenge governed by the rational basis standard is limited: ‘if any statement of facts may be reasonably conceived to justify the enactment, it must be upheld.’ [Citation.]” People v. Beard, 366 Ill. App. 3d 197, 205 (2006). Sex offenders are not a suspect class nor are they faced with the implication of a fundamental right. My best guess is that the failure to include these juveniles in the group who can petition for early termination of the registration requirement is simply a legislative oversight. Regardless of the reason, I find no constitutional infirmity. Equal protection does not require that all persons be treated equally. People v. Pembrock, 62 Ill. 2d 317 (1976). Respondent was found unfit to stand trial. This differentiates him from a juvenile found fit to stand trial and ultimately adjudicated delinquent. His term of registration does not exceed that of an adjudicated juvenile yet, unlike a juvenile that has been adjudicated delinquent, he cannot petition to reduce his term of registration. The majority states this literal reading of the statute creates an “absurd and unjust” result. 408 Ill. App. 3d at 520. Let us look at an analogous situation. Under section 104 — 25, an adult found “not not guilty” can be held for treatment up to the maximum time he could have been incarcerated had he been convicted. However, a person convicted of many offenses would be eligible for day-for-day good-time credit while incarcerated. One who is confined after being found “not not guilty” is not entitled to the good-time credit. See People v. Rasgaitis, 222 Ill. App. 3d 855 (1991). If being involuntarily confined for a time period equal to the maximum sentence available had he been convicted, without the opportunity to apply for good-time credit, does not violate equal protection concerns, I fail to see how not being able to apply for early termination of registration would constitute an equal protection violation under the facts before us. Respondent next alleges the discharge hearing denied him his constitutional right to due process. Respondent’s argument has already been rejected by our supreme court. People v. Waid, 221 Ill. 2d 464 (2006). I respectfully dissent.