# Illinois Official Reports

## Appellate Court

---

### *People v. Bingham*, 2017 IL App (1st) 143150

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JEROME BINGHAM, Defendant-Appellant. |
| | |
| District & No. | First District, Sixth Division<br>Docket No. 1-14-3150 |
| | |
| Filed | February 10, 2017 |
| | |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 14-CR-11336; the Hon. Bridget Jane Hughes, Judge, presiding. |
| | |
| Judgment | Affirmed as modified. |
| | |
| Counsel on Appeal | Michael J. Pelletier and Deborah Nall, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Mary L. Boland, and Haley Peck, Assistant State's Attorneys, of counsel), for the People. |
| | |
| Panel | JUSTICE ROCHFORD delivered the judgment of the court, with opinion.<br>Presiding Justice Hoffman and Justice Cunningham concurred in the judgment and opinion. |

**OPINION**

¶ 1    Following a bench trial in September 2014, the trial court convicted defendant, Jerome Bingham, of theft, which was elevated to a Class 4 felony due to a previous retail theft conviction, and sentenced him to three years' imprisonment. Defendant had a prior conviction in 1983 for attempted criminal sexual assault for which he had not been required to register as a sex offender because the conviction occurred prior to enactment of the Sex Offender Registration Act (Act) (730 ILCS 150/1 *et seq.* (West 2012)) in 1986. Under section 3(c)(2.1) of the Act (730 ILCS 150/3(c)(2.1) (West 2012)), as amended in 2011, defendant's 2014 felony theft conviction in this case required him to register as a sex offender for the 1983 attempted criminal sexual assault. On appeal, defendant contends (1) the Act is unconstitutional as applied to him; (2) the Act violates the *ex post facto* clauses of the United States and Illinois Constitutions; (3) his theft conviction was improperly elevated from a Class A misdemeanor to a Class 4 felony, and the trial court improperly imposed an enhanced three-year sentence for the Class 4 felony conviction; and (4) the trial court erroneously imposed a DNA analysis fee and failed to apply the $5 per day credit for presentence incarceration to several charges that qualify as fines. We affirm defendant's conviction, three-year sentence, and the requirement that he register as a sex offender. We vacate his DNA analysis fee, credit him with $65 as against his fines, and direct the clerk of the circuit court to modify the fines and fees order accordingly.

¶ 2                                I. Defendant's Theft Conviction

        Defendant was charged with theft after a surveillance camera recorded him taking several pallets from the unfenced yard of a Kmart in Norridge, Illinois, at approximately 6:30 p.m. on May 3, 2014. The indictment alleged that defendant committed theft "in that he, knowingly obtained or exerted unauthorized control over property, to wit: pallets, of a value less than five hundred dollars, the property of Kmart, intending to deprive Kmart, permanently of the use or benefit of said property, and the defendant has been previously convicted of the offense [of] retail theft under case number 00125524901, in violation of Chapter 720 Act 5 section 16-1(a)(1) of the Illinois Compiled Statutes 1992 as amended."

¶ 3    The cause proceeded to a one-day trial on September 11, 2014. At trial, Ali Sahtout testified he works as a security guard at the Kmart at 4201 North Harlem Avenue in Norridge. At approximately 6:30 p.m. on May 3, 2014, Mr. Sahtout was in the Kmart security office monitoring the video cameras when he saw defendant drive his truck to the receiving area in the back of the store where storage units and pallets belonging to Kmart are located. Defendant exited his truck, grabbed a total of six pallets (two pallets at a time), and put them on the back of his truck. Then he drove away. The pallets were valued at $12 each. Defendant was never given permission to take the pallets.

¶ 4    Mr. Sahtout contacted the Norridge police department. About five minutes later, the police called him back and asked him to come to a location a half block from the receiving area of the store. Mr. Sahtout went there and saw that the officers had pulled defendant over and placed him in a squad car.

¶ 5    Mr. Sahtout identified People's exhibit No. 1 as the video depicting defendant taking the pallets and putting them in the back of his truck. Mr. Sahtout identified People's exhibits Nos. 2 through 5 as photographs truly depicting how defendant's truck appeared on May 3, 2014.

¶ 6	Officer Peter Giannakopoulos of the Norridge police department testified that at approximately 6:30 p.m. on May 3, 2014, he was patrolling the 4200 block of Harlem Avenue. He was dispatched to the Kmart store a half block away because there was a report that an African-American man in a black pickup truck with registration plate 1129940 B had taken some pallets from the rear of the property.

¶ 7	Officer Giannakopoulos arrived at the Kmart receiving area about two minutes later, and he saw a black pickup truck with registration plate 1129940 B leaving the area. Defendant was the driver. The officer curbed the truck and saw several pallets on the truck's open bed.

¶ 8	Officer Giannakopoulos asked Mr. Sahtout to come to his location to make an identification. Mr. Sahtout came and identified defendant as the person who had taken the pallets from the rear of the Kmart. Defendant was placed under arrest.

¶ 9	Following the testimony of Officer Giannakopoulos, the parties stipulated that defendant had a previous conviction for retail theft in case No. 00125524901. The State entered its exhibits into evidence, and the trial court viewed the video depicting defendant taking the pallets from the Kmart receiving area. The State then rested.

¶ 10	Defendant testified he was a retired truck driver, who now works as a metal scrapper, and that, about six months before the incident at issue, he had a conversation with a person who was driving a forklift in the back of the Kmart at 4201 North Harlem Avenue. The forklift driver told defendant that it would be okay for him to take broken pallets from behind the Kmart for scrapping purposes. Pursuant to this conversation with the forklift driver, defendant took several broken pallets from the Kmart receiving area on May 3 and was subsequently pulled over by the police. Defendant testified he believed he had permission from the forklift driver to take the broken pallets, and therefore, he did not believe he was guilty of theft.

¶ 11	On September 11, 2014, following defendant's testimony, the trial court convicted defendant of theft. The cause proceeded to sentencing. The presentence investigation report (PSI) detailed defendant's prior criminal history, including attempted criminal sexual assault in 1983, possession of a controlled substance in 1993 and 1996, violation of an order of protection in 1999, retail theft of less than $150 in 1999, possession of a stolen vehicle in 2000, two retail thefts in 2000, theft in 2004, and possession of a controlled substance in 2005 and 2007. At sentencing, the State presented evidence that on May 2, 2014 (the day before the theft of which he was convicted here), defendant had stolen additional pallets from the Kmart located at 4201 North Harlem Avenue.

¶ 12	The trial court sentenced defendant to three years' imprisonment on his theft conviction, which was elevated to a Class 4 felony due to his previous conviction for retail theft, plus $699 in various fines, fees, and costs.

¶ 13	II. Defendant's Sex Offender Registration

¶ 14	The PSI indicated that defendant was convicted of attempted criminal sexual assault in 1983 and sentenced to four years' imprisonment. At the time of defendant's offense in 1983, he was not required to register as a sex offender because the Act had not yet been enacted. The Act was subsequently enacted in 1986 and amended in 2011 to provide that "[a] sex offender or sexual predator, who has never previously been required to register under this Act, has a duty to register if the person has been convicted of any felony offense after July 1, 2011." 730 ILCS 150/3(c)(2.1) (West 2012). Defendant's 2014 felony conviction for theft now requires

him to register as a sex offender for his commission of attempted criminal sexual assault in 1983.

¶ 15                                    III. Defendant's Appeal

¶ 16        First, defendant contends the Act is unconstitutional as applied to him. Specifically, defendant contends his history of nonviolent and nonsexual offenses (since his 1983 conviction for attempted criminal sexual assault) and the circumstances of the 2014 felony theft of six pallets from the Kmart do not indicate he is at risk of committing another sex offense. Therefore, defendant argues the Act violates his substantive due process rights by requiring him to register as a sex offender because on these facts there is no reasonable relationship between the registration requirement and the Act's purpose of protecting the public from sex offenders.

¶ 17        A statute is presumed constitutional, and defendant, as the party challenging the statute, bears the burden of demonstrating its invalidity. *People v. Malchow*, 193 Ill. 2d 413, 418 (2000). Courts have the duty to uphold the constitutionality of a statute whenever reasonably possible, resolving any doubts in favor of its validity. *People v. Patterson*, 2014 IL 115102, ¶ 90. We review *de novo* the constitutionality of a statute. *Id.*

¶ 18        "When confronted with a claim that a statute violates the due process guarantees of the United States and Illinois Constitutions, courts first must determine the nature of the right purportedly infringed upon by the statute. [Citation.] Where the statute does not affect a fundamental constitutional right, the test for determining whether the statute complies with substantive due process is the rational basis test. [Citation.] To satisfy this test, a statute need only bear a rational relationship to the purpose the legislature sought to accomplish in enacting the statute. [Citation.] Pursuant to this test, a statute will be upheld if it bears a reasonable relationship to a public interest to be served, and the means adopted are a reasonable method of accomplishing the desired objective." (Internal quotation marks omitted.) *In re J.W.*, 204 Ill. 2d 50, 66-67 (2003). The rational basis test is highly deferential; if there is any conceivable set of facts showing a rational basis for the statute, it will be upheld. *People v. Johnson*, 225 Ill. 2d 573, 585 (2007).

¶ 19        The parties make no argument that the Act affects a fundamental right; accordingly, we analyze the statute using the rational basis test. See *In re J.W.*, 204 Ill. 2d at 67 (analyzing the constitutionality of the Act using the rational basis test).

¶ 20        Initially, the State argues we lack a sufficient evidentiary record to review defendant's "as-applied" constitutional challenge, in the absence of an evidentiary hearing and findings of fact. In support, the State cites *People v. Mosley*, 2015 IL 115872, which held that a court is not capable of making an "as-applied" determination of constitutionality where there has been no evidentiary hearing and no findings of fact and that, in the absence of such an evidentiary hearing and findings of fact, the constitutional challenge must be facial. *Id.* ¶¶ 47, 49. The requirement of an evidentiary hearing and findings of fact for an "as-applied" challenge exists because, unlike a facial challenge that "requires demonstrating that a statute is unconstitutional under any set of facts, an as-applied challenge requires demonstrating that the statute is unconstitutional under the particular circumstances of the challenging party." *People v. Gray*, 2016 IL App (1st) 134012, ¶ 33. "Because as-applied challenges are dependent on the particular facts, it is paramount that the record be sufficiently developed in terms of those facts and circumstances for purposes of appellate review." (Internal quotation marks omitted.) *Id.*

¶ 21    In the present case, the particular circumstances of defendant's as-applied due process challenge centers around whether the Act's requirement that he register as a sex offender for committing a 2014 felony theft more than 30 years after his 1983 conviction for attempted criminal sexual assault is rationally related to the Act's purpose of protecting the public from sex offenders, where his criminal background (other than the 1983 conviction) shows no other violent or sexual offenses. The record on appeal is sufficient for us to review defendant's as-applied challenge to the constitutionality of the Act, as the record contains the transcript of the bench trial at which the parties thoroughly explored the circumstances of the 2014 felony theft offense of which he ultimately was convicted, as well as the transcript of the sentencing hearing that explored his criminal history, including his 1983 attempted criminal sexual assault. The appellate record also contains the PSI, which further discussed defendant's criminal history, including his 1983 conviction for attempted criminal sexual assault. The record on appeal is sufficient to enable us to consider whether the Act, as applied to the particular facts of defendant's case, is unconstitutional. See, *e.g.*, *Gray*, 2016 IL App (1st) 134012, ¶ 36 (holding that the evidentiary record established at trial was sufficient for appellate review of defendant's as-applied challenge). We proceed to address defendant's as-applied due process argument which, as discussed, is reviewed here under the rational basis test.

¶ 22    Under the rational basis test, "our inquiry is twofold: we must determine whether there is a legitimate state interest behind the legislation, and if so, whether there is a reasonable relationship between that interest and the means the legislature has chosen to pursue it." *Johnson*, 225 Ill. 2d at 584.

¶ 23    Our supreme court has held that the purpose of the Act "is to aid law enforcement by facilitating ready access to information about sex offenders and, therefore, to protect the public" and that "[t]his is obviously a legitimate state interest." *Id.* at 585. Defendant does not dispute the legitimacy of the State's interest in protecting the public from sex offenders. Rather, defendant argues that, as applied to him, the Act's requirement that he register as a sex offender for committing the "minor" 2014 felony theft after having committed the attempted criminal sexual assault in 1983 bears no reasonable relationship to the Act's purpose, where his history of nonviolent and nonsexual offenses (other than the 1983 conviction) and the circumstances of the 2014 felony theft do not indicate he is at risk of committing another sex offense.

¶ 24    We disagree. Defendant's lengthy criminal history from 1983 to 2014, including attempted criminal sexual assault in 1983; possession of a controlled substance in 1993, 1996, 2005, and 2007; violation of an order of protection in 1999; retail theft in 1999 and 2000; possession of a stolen vehicle in 2000; and theft in 2004, coupled with his felony conviction for theft in this case in 2014, shows his general tendency to recidivate, *i.e.*, to return to a habit of criminal behavior. One of defendant's prior criminal behaviors was for attempted criminal sexual assault, which is currently defined as a sex offense under the Act. See 730 ILCS 150/2(B) (West 2012). Defendant's sex offense was committed more than 30 years ago, in 1983, prior to the enactment of the Act's registration requirement, but his recent felony theft conviction in this case came in 2014, after the Act's enactment. Under section 3(c)(2.1) of the Act, as amended in 2011, his 2014 felony theft conviction now requires him to register as a sex offender for committing the 1983 attempted criminal sexual assault. Even though the 2014 felony theft was nonviolent and nonsexual ("minor" according to defendant), it still exhibited

(along with defendant's other crimes committed since 1983) his general tendency to return to his prior criminal behavior, and as discussed, one of those prior criminal behaviors involved a sex offense. The legislature reasonably could determine that where, as here, defendant has committed a sex offense in the past for which he was not then required to register and has shown a recent, general tendency to recidivate by committing a new felony since the amendment of the Act in 2011, he poses the potential threat of committing a new sex offense in the future. Such a threat is magnified in the instant case, where defendant has committed no less than 11 crimes (6 felonies and 5 misdemeanors), in addition to the 2014 felony theft at issue here, since his attempted criminal sexual assault in 1983. The Act's requirement that defendant register as a sex offender for committing the 2014 felony theft after having committed the 1983 attempted criminal sexual assault is a reasonable method for accomplishing the desired legislative objective of protecting the public from sex offenders. Accordingly, the Act as applied to defendant satisfies the rational basis test and is constitutional, and therefore, defendant's as-applied due process challenge to the Act fails.

¶ 25   Next, defendant contends section 3(c)(2.1) of the Act violates the *ex post facto* clauses of the United States and Illinois constitutions by imposing a new and ongoing punishment (the registration requirement) for the attempted criminal sexual assault offense he committed more than 30 years ago.

¶ 26   The *ex post facto* clauses in the United States and Illinois Constitutions prohibit the retroactive application of laws inflicting greater punishment than the law in effect at the time a crime was committed. *People v. Fredericks*, 2014 IL App (1st) 122122, ¶ 54. Whether a law constitutes "punishment" or not hinges on whether the legislature intended the law to establish civil proceedings or impose punishment. *Id.* Even where the legislative intent was to enact a civil regulatory scheme instead of a punitive scheme, the law may violate the *ex post facto* clauses when the clearest proof shows it is so punitive, either in purpose or effect, as to constitute punishment. *Id.*

¶ 27   The Illinois Supreme Court "has consistently held that the Act's registration requirement is not a punishment." *People ex rel. Birkett v. Konetski*, 233 Ill. 2d 185, 207 (2009) (citing *In re J.W.*, 204 Ill. 2d at 75, *Malchow*, 193 Ill. 2d at 424, and *People v. Adams*, 144 Ill. 2d 381, 386-90 (1991)). Defendant argues that we should disregard this precedent and look to *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69 (1963), which sets forth the following seven factors to determine whether an ostensibly civil statute has a punitive effect: (1) whether the sanction involves an affirmative disability or restraint, (2) whether the sanction historically has been regarded as punishment, (3) whether the sanction applies only on a finding of *scienter*, (4) whether operation of the sanction promotes retribution and deterrence, (5) whether the behavior to which the sanction applies is already a crime, (6) whether an alternative purpose to which the sanction may rationally be connected is assignable to it, and (7) whether the sanction appears excessive in relation to the alternative purpose assigned. *Fredericks*, 2014 IL App (1st) 122122, ¶ 58 (applying *Mendoza-Martinez* factors).

¶ 28   Defendant contends that, applying the *Mendoza-Martinez* factors, we should find that the registration requirement is a punishment and that the Act therefore violates the *ex post facto* clauses by retroactively imposing the registration requirement upon him for a crime (attempted criminal sexual assault) committed more than 30 years ago. "We, however, are bound by the decisions of the Illinois Supreme Court" that have held that the registration requirement is not

a punishment and, thus, that the Act does not violate the *ex post facto* clauses. *People v. Jenk*, 2016 IL App (1st) 143177, ¶ 26.

¶ 29    Further, we note that in considering an *ex post facto* challenge to the Sex Offender and Child Murderer Community Notification Law (Notification Law) (730 ILCS 152/101 *et seq.* (West 1998)), which requires the Illinois State Police to maintain a sex offender database to identify sex offenders and make information about them available to certain specified persons, the Illinois Supreme Court in *Malchow* expressly considered the *Mendoza-Martinez* factors. *Malchow*, 193 Ill. 2d at 421-24. The Illinois Supreme Court concluded that the *Mendoza-Martinez* factors did not weigh in favor of a conclusion that the Notification Law constituted punishment, and thus, the *ex post facto* claim failed. *Id.* at 424.

¶ 30    In *Fredericks*, the appellate court considered an *ex post facto* argument regarding the Act at issue here and examined the *Mendoza-Martinez* factors. The appellate court held that *Malchow*'s analysis of the *Mendoza-Martinez* factors with regard to the Notification Law also applies to the Act at issue here and concluded that the sex offender registration is not punishment and, thus, that the Act does not violate the *ex post facto* clauses. *Fredericks*, 2014 IL App (1st) 122122, ¶¶ 58-61. We adhere to *Fredericks* and reject defendant's *ex post facto* claim.

¶ 31    Next, defendant contends the trial court improperly elevated his theft conviction from a Class A misdemeanor to a Class 4 felony and then improperly imposed an "enhanced" three-year sentence on him as a Class 4 felony offender, meaning the court imposed a lengthier sentence based on the higher classification of the offense. Section 16-1(b)(1) of the Criminal Code of 2012 provides that "[t]heft of property not from the person and not exceeding $500 in value is a Class A misdemeanor." 720 ILCS 5/16-1(b)(1) (West 2012). However, defendant here was expressly charged by indictment with theft after having "been previously convicted of the offense [of] retail theft." Therefore, defendant's theft conviction was elevated to a Class 4 felony offense pursuant to section 16-1(b)(2) of the Criminal Code of 2012, which states in pertinent part, "A person who has been convicted of theft of property not from the person and not exceeding $500 in value who has been previously convicted of any type of theft *** is guilty of a Class 4 felony." 720 ILCS 5/16-1(b)(2) (West 2012). As a Class 4 felony offender, defendant was subject to a one- to three-year term of imprisonment. See 730 ILCS 5/5-4.5-45(a) (West 2012).

¶ 32    Defendant contends he should not have been given an enhanced three-year sentence as a Class 4 felony offender because the State failed to comply with section 111-3(c) of the Code of Criminal Procedure of 1963 (Code), which provides:

> "When the State seeks an enhanced sentence because of a prior conviction, the charge shall also state the intention to seek an enhanced sentence and shall state such prior conviction so as to give notice to the defendant. However, the fact of such prior conviction and the State's intention to seek an enhanced sentence are not elements of the offense and may not be disclosed to the jury during trial unless otherwise permitted by issues properly raised during such trial. For the purposes of this Section, 'enhanced sentence' means a sentence which is increased by a prior conviction from one classification of offense to another higher level classification of offense set forth in Section 5-4.5-10 of the Unified Code of Corrections (730 ILCS 5/5-4.5-10); it does not include an increase in the sentence applied within the same level of classification of offense." 725 ILCS 5/111-3(c) (West 2012).

¶ 33    Defendant argues that the indictment failed to comply with section 111-3(c) because it did not expressly state the intention to seek the enhanced three-year sentence for a Class 4 felony, and thus, defendant contends we should reduce his theft conviction to a Class A misdemeanor and remand his case for resentencing. The State counters that defendant has failed to show any prejudice by the alleged defect in the indictment.

¶ 34    The timing of the challenge to the indictment determines whether defendant must show he was prejudiced by the defect in the charging instrument. *People v. Stephenson*, 2016 IL App (1st) 142031, ¶ 18. "If an indictment or information is challenged in a pretrial motion, it must strictly comply with the pleading requirements of section 111-3." (Internal quotation marks omitted.) *Id.* However, if the defendant challenges the sufficiency of the charging instrument for the first time on appeal, he must show he was prejudiced by the defect in the indictment. *Id.*

¶ 35    Defendant here challenges the sufficiency of the indictment under section 111-3(c) for the first time on appeal and, thus, must show he was prejudiced thereby, *i.e.*, that the indictment failed to notify him that he was being charged with a Class 4 felony theft. See *People v. Jameson*, 162 Ill. 2d 282, 290, 291 (1994) (holding that "[s]ection 111-3(c) ensures that a defendant receives pretrial notice that the State is charging the defendant with a higher classification of offense because of a prior conviction" and that "[t]he legislature enacted section 111-3(c) to ensure that a defendant received notice, before trial, of the *offense* with which he is charged" (emphasis in original)).

¶ 36    Initially, we note that defendant makes no argument that he was not on notice before trial that he was being charged with a Class 4 felony theft. Nor could he make such an argument, as the indictment informed him that he was being charged with theft after having been previously convicted of retail theft. Only one offense level and sentencing range is allowed for a defendant charged with theft who has a prior conviction for retail theft: a Class 4 offense with a prison term of between one and three years. See 720 ILCS 5/16-1(b)(2) (West 2012); 730 ILCS 5/5-4.5-45(a) (West 2012). Accordingly, as defendant was on notice before trial that he was being charged with Class 4 felony theft subject to a potential three-year term of imprisonment, his challenge to the sufficiency of the indictment fails.

¶ 37    Next, defendant argues that the trial court erred in its assessment of certain fines and fees. Defendant forfeited review by failing to object during sentencing. *People v. Hillier*, 237 Ill. 2d 539, 544 (2010). We choose to review the issue as plain error under Illinois Supreme Court Rule 615(a).

¶ 38    First, defendant argues, and the State agrees, that the $250 DNA analysis fee was improperly imposed on him by the trial court and should be vacated because defendant is currently registered in the DNA database. See *People v. Marshall*, 242 Ill. 2d 285, 303 (2011). Accordingly, we vacate the $250 DNA analysis fee and direct the clerk of the circuit court to modify the fines and fees order accordingly.

¶ 39    Next, defendant argues the trial court improperly imposed a $50 fine on him pursuant to section 5-1101(c) of the Counties Code (55 ILCS 5/5-1101(c) (West 2012)). Section 5-1101(c) provides for defendant to be charged $50 after being found guilty of a felony. Defendant was convicted of a felony, and therefore we affirm the $50 fine pursuant to section 5-1101(c).

¶ 40    Next, defendant argues, and the State agrees, that he is entitled to (1) a $15 presentence incarceration credit to be applied to the $15 State Police operations fine and (2) a $50 presentence incarceration credit to be applied to the $50 court system fine. Thus, we direct the clerk of the circuit court to modify the fines and fees order to reflect a reduction of defendant's

fines by a total of $65. See section 110-14(a) of the Code (725 ILCS 5/110-14(a) (West 2012) (providing that a defendant who is assessed a fine is allowed a credit of $5 for each day he was in custody on a bailable offense for which he did not post bail)).

¶ 41     Finally, defendant contends the $190 fee imposed on him for the filing of a felony complaint is actually a fine subject to the $5 per day presentence incarceration credit. The $5 per day presentence incarceration credit applies to "fines," which are pecuniary punishments imposed as part of a criminal sentence. *People v. Tolliver*, 363 Ill. App. 3d 94, 96-97 (2006). The $5 per day presentence incarceration credit does not apply to "fees." *Id.* at 96. A "fee" "is a charge for labor or services, and is a collateral consequence of the conviction which is not punitive, but instead, compensatory in nature." *Id.* at 97.

¶ 42     In *Tolliver*, we held that the charge imposed on a defendant for the filing of a felony complaint is a fee not a fine, and therefore, the $5 per day presentence incarceration credit provided for in section 110-14(a) of the Code does not apply. *Id.* Accordingly, we affirm defendant's $190 fee for the filing of the felony complaint.

¶ 43     For all the foregoing reasons, we affirm the judgment of the circuit court and direct the clerk of the circuit court to modify the fines and fees order pursuant to Illinois Supreme Court Rule 615(b)(1).

¶ 44     Affirmed as modified.