2020 IL App (1st) 173100-U

No. 1-17-3100

September 16, 2020

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 15 CR 1935 |
| | ) | |
| JAMES JOHNSON, | ) | Honorable |
| | ) | Maura Slattery Boyle, |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE HOWSE delivered the judgment of the court.
Justices McBride and Burke concurred in the judgment.

ORDER

¶ 1 *Held*: We affirm defendant's conviction for failing to report in violation of the Sex Offender Registration Act over his contention the State failed to prove his guilt beyond a reasonable doubt.

¶ 2 Following a bench trial, defendant James Johnson was found guilty of failing to report in violation of the Sex Offender Registration Act (Act) (730 ILCS 150/1 *et seq.* (West 2014)), and sentenced to six years' imprisonment. Defendant appeals, contending the State failed to prove his guilt beyond a reasonable doubt. We affirm.

¶ 3 The State charged defendant by indictment with one count of failing to report in violation of the Act (730 ILCS 150/6 (West 2014)), alleging that, between December 25, 2014, and January 8, 2015, defendant, who had a duty to report weekly under the Act and who lacked a fixed residence, knowingly failed to report in person to the Chicago police department. The matter proceeded to a bench trial, at which the following evidence was presented.

¶ 4 Detective Crystal Nix testified that, in December 2014, she worked in the criminal registration unit of the Chicago police department. On December 17, 2014, defendant came to the registration unit to register. Nix was familiar with defendant, had registered him "numerous" times, and each time defendant claimed to be a homeless person in Chicago, which required him to register on a weekly basis. Defendant presented Nix his state identification (ID) card and his weekly "humper" sheet, which is a form that a weekly registrant must fill out to let police know where they have been the prior week. Defendant indicated he was still homeless.

¶ 5 Nix completed defendant's registration form, which was admitted into evidence. She asked defendant to verify whether the information included thereon, including the fact he was homeless, was true and correct. Defendant verified his information and signed the form. The second page of the form stated that defendant was required to next register on or before December 24, 2014. Defendant signed the second page, acknowledging he understood he was required to so register. He also initialed a section of the form stating that, if he changed addresses, he was required to notify the law enforcement agency with which he last registered and to notify the law enforcement agency having jurisdiction at his new address.

¶ 6 Nix testified defendant did not register at any time between December 17 and 24, 2014. She worked on December 24, 2014, but did not see defendant. She also reviewed a log for that

day, as well as logs for each day thereafter until January 9, 2015, and defendant's name did not appear on the logs.

¶ 7    Officer John Stanley testified that, at approximately 10:45 a.m. on January 9, 2015, he was on routine patrol near the 2400 block of West 71st Street in Chicago when he encountered defendant, who was walking in the middle of the street. Defendant saw Stanley and quickly turned right and walked west into an alley.

¶ 8    Stanley approached defendant and asked him for his name and date of birth. Defendant told Stanley his name was "James L. Adams," and his date of birth was October 30, 1977. Stanley ran that information through the Law Enforcement Agencies Data System (LEADS), and it "came back [with] no record." Stanley asked defendant again for his information and defendant told him he had a state ID "so it should've popped up on the computer." Defendant gave an address. Stanley ran the address through the Citizen and Law Enforcement Analysis and Reporting (CLEAR) system, and it came back with the name "James Johnson" and defendant's photograph.

¶ 9    Stanley confronted defendant with this information, and defendant told Stanley he gave a fake name because he was late on his reporting requirement. Stanley placed defendant under arrest, transported him to the eighth district, and notified a detective.

¶ 10   Detective David Lunsford testified that, on January 9, 2015, he went to the eighth district to process defendant for failure to register as a sex offender. Lunsford advised defendant of his *Miranda* rights (*Miranda v. Arizona*, 384 U.S. 436 (1966)) and spoke with him. Defendant told Lunsford he did not report on December 24, 2014, because he was suffering from health problems, but he did appear to report on December 26, 2014, and placed his name on the log.

Lunsford reviewed the logs and determined defendant had not registered on December 26, and, when he confronted defendant with this fact, defendant told him "he spoke to a light-skinned female police officer who told him to lay low, don't get stopped by the police and everything will be okay."

¶ 11    The State presented a certified copy of defendant's 2004 conviction for aggravated criminal sexual abuse, which was admitted into evidence. Defendant moved for a directed finding, which the trial court denied.

¶ 12    Defendant presented a stipulation, which established that, from July 2014 to September 2014, defendant was hospitalized on several occasions for a staph infection and an epidural abscess and each time left the hospital against medical advice. During those hospitalizations, he showed psychotic symptoms, and it was recommended that he take an antipsychotic medication. In addition, he was hospitalized shortly after his arrest in this case for cervical osteomyelitis and the epidural abscess and, on January 10, 2015, was "floridly psychotic."

¶ 13    The trial court found defendant guilty of knowingly failing to report in violation of the Act. After trial, defense counsel filed a posttrial motion, and defendant filed a *pro se* motion in which he raised allegations of ineffective assistance of counsel, triggering a preliminary inquiry under *People v. Krankel*, 102 Ill. 2d. 181 (1984).[1] During the *Krankel* inquiry, defendant stated that he was arrested while on his way to register. The court found defendant failed to meet his burden under *Krankel* and denied defendant's *pro se* motion.

¶ 14    The trial court thereafter denied defense counsel's posttrial motion, found defendant eligible to be sentenced as a Class X offender based on his criminal history, and sentenced him to

---

[1] The record does not contain defendant's *pro se* motion.

six years' imprisonment. Defendant filed a motion to reconsider his sentence, which the court denied. This appeal followed.

¶ 15    On appeal, defendant contends the State failed to prove his guilt beyond a reasonable doubt.

¶ 16    When a defendant presents a challenge to the sufficiency of the State's evidence, "a reviewing court must determine whether after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Internal quotation marks omitted; emphasis in original.) *People .v Ross*, 229 Ill. 2d 255, 272 (2008). In doing so, the reviewing court does not retry the defendant, and "the trier of fact remains responsible for making determinations regarding the credibility of the witnesses, the weight to be given their testimony, and the reasonable inferences to be drawn from the evidence." *Id.* The mere fact that the trier of fact accepted certain testimony or made certain inferences based on the evidence does not guarantee reasonableness of the decision. *Id.* However, the trier of fact need not disregard inferences which normally flow from the evidence or search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt. *People v. Wheeler*, 226 Ill. 2d 92, 117 (2007). "A criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt." *People v. Collins*, 106 Ill. 2d 237, 261 (1985).

¶ 17    A person's guilt may be established solely by circumstantial evidence as long as the elements of the crime have been proven beyond a reasonable doubt. *People v. Milka*, 211 Ill. 2d 150, 178 (2004). " 'The trier of fact need not *** be satisfied beyond a reasonable doubt as to each link in the chain of circumstances. It is sufficient if all the evidence taken together satisfies

the trier of fact beyond a reasonable doubt of the defendant's guilt.' " *Id.* (quoting *People v. Hall*, 194 Ill. 2d 305, 330 (2000)).

¶ 18    The Act "was designed to aid law enforcement agencies by allowing them to 'monitor the movements of the perpetrators by allowing ready access to crucial information.' " *People v. Molnar*, 222 Ill. 2d 495, 499 (2006) (quoting *People v. Adams*, 144 Ill. 2d 381, 388 (1991)). Section 6 of the Act provides, in relevant part, that a sex offender who is required to report under the Act and lacks a fixed residence must report weekly, in person, with a designated police agency within the jurisdiction in which he or she is located. 730 ILCS 150/6 (West 2014); see also *id.* § 3(a) (imposing upon sex offenders who lack a fixed residence the duty to report weekly in person). Further, "[t]he agency of jurisdiction will document each weekly registration to include all the locations where the person has stayed during the past [seven] days." *Id.* § 3(a). Additionally, "if the offender leaves the last jurisdiction of residence, he or she[] must within [three] days after leaving register in person with the new agency of jurisdiction." *Id.* § 6. Section 3(a) requires that any person who lacks a fixed residence must notify the agency of jurisdiction of his or her last known address within 3 days of ceasing to have a fixed residence. *Id.* § 3(a). Section 10(a) of the Act makes it a Class 3 felony to fail to register as required by the Act and a Class 2 felony to fail to register a second or subsequent time. *Id.* § 10(a).

¶ 19    In this court, defendant contends that the State failed to prove beyond a reasonable doubt that he was required to register under the Act because it presented no evidence that he was required to register with the Chicago Police Department between the dates of December 24, 2014, and January 9, 2015.

¶ 20    Initially, we note that while the indictment charged defendant with having failed to register at any time between December 25, 2014, and January 8, 2015, the offense was completed when defendant failed to register between December 17, 2014, and December 24, 2014. The Act requires offenders who lack a fixed residence to report weekly and does not provide any sort of exemption, grace period, or mechanism for reporting late. See generally *id.* §§ 3(a), 6. Here, there is no dispute defendant reported as a homeless person to the Chicago police department on December 17, 2014, and therefore, he was required to report again no later than December 24, 2014. When he failed to report between December 17 and December 24, the offense was completed.

¶ 21    With this in mind, we find that, when viewing the evidence presented at trial in the light most favorable to the State and drawing all reasonable inferences in the State's favor, a rational trier of fact could conclude defendant committed the offense of failing to report in violation of the Act. As noted above, defendant appeared at the Chicago police department registration unit on December 17, 2014, and signed his registration form, acknowledging that he had to return to report on or before December 24, 2014. Nix's testimony established that defendant did not appear at the criminal registration unit at any time during that one week period, nor anytime thereafter until his arrest on January 9, 2015. In addition, Stanley testified that, when he encountered defendant in the middle of a Chicago street and asked him for his name, defendant said his name was James L. Adams. Defendant also provided Stanley with an address and Stanley learned that defendant's name was James Johnson. When Stanley confronted defendant with this information, defendant told Stanley he gave a fake name because he was late on his

reporting requirement. This evidence and the reasonable inferences therefrom were sufficient to sustain defendant's conviction for failing to report in violation of the Act.

¶ 22    Defendant nevertheless argues the State failed to prove that he was located within Chicago during the relevant timeframe and therefore required to report to the Chicago police department, as opposed to some other law enforcement agency. Because this proof was lacking, defendant argues, we must reverse his conviction. We are not persuaded.

¶ 23    It is true, as defendant asserts, the State presented no direct evidence establishing defendant lacked a fixed residence but was located within Chicago. However, strong circumstantial evidence permitted an inference that he was so located. Indeed, the State presented evidence of defendant's registration history through Nix, who testified she was familiar with defendant, had registered him "numerous times," and each time defendant did so as a homeless person. Moreover, defendant's postarrest statements permitted an inference that defendant was obligated to report in Chicago as opposed to some other location. As mentioned, when he spoke with Stanley at the time of arrest, defendant admitted he was late on his sex offender reporting requirement. Further, defendant admitted to Lunsford that he did not report as required on December 24 due to his health problems but appeared two days later, on December 26, to register there. From this evidence, the trial court reasonably concluded defendant's status as a homeless person in the city of Chicago had not changed.

¶ 24    Defendant also notes he provided Stanley with an address but the evidence did not establish what the address was. He contends it is possible he obtained a fixed or temporary residence somewhere outside Chicago, obviating his need to report to the Chicago police department. As noted above, the Act placed upon sex offenders an affirmative duty to update

their registration upon a change of address. Thus, unless or until an offender's registration changes, the State is entitled to rely on the previously registered information—in this case, defendant's status as a homeless person—as accurate. Here, there is no evidence defendant registered a fixed or temporary address between his last report on December 17, 2014, and his arrest on January 9, 2015. It is entirely possible defendant simply gave Stanley his last known address. In any event, given there was no evidence that defendant's registration status had changed, all the State was required to prove was that defendant registered as a homeless person on December 17, 2014, and that he did not report to the criminal registration unit on or before December 24, 2014. The evidence presented by the State was sufficient to prove these facts.

¶ 25    Finally, we are not persuaded by defendant's reliance on *People v. Gomez*, 2017 IL App (1st) 142950. In *Gomez*, the defendant was charged with knowingly failing to register within three days of obtaining a residence or temporary domicile. Thus, the State was required to prove the defendant resided at a specific location in Chicago for an aggregate of three days in the relevant calendar year. *Id.* ¶¶ 15-16. Here, on the other hand, defendant was charged with knowingly failing to report weekly in person to the law enforcement agency with whom he last registered based on his status as a homeless person.

¶ 26    As noted above, a reviewing court will not reverse a defendant's conviction unless the evidence was so improbable or unsatisfactory that it creates a reasonable doubt of his or her guilt. This is not one of those cases. Accordingly, we affirm the trial court's judgment.

¶ 27    For the reasons stated, we affirm the trial court's judgment.

¶ 28    Affirmed.